Daniel HODGE, Teresa Cornette, Marshall King, Marilyn Gallion, and Martha Short, Appellants (Plaintiffs Below),

v.

NOR–CEN, INC., Lloyd Holt, Jack Colescott, Jules Walker, Michael Barney and Wayne Folkerth, Appellees (Defendants Below).

No. 27A02–8610–CV–00369.

Court of Appeals of Indiana, Second District.

Sept. 14, 1988.

Rehearing Denied Oct. 31, 1988.

Joe Keith Lewis, Fishburne & Lewis, Marion, for appellants Daniel Hodge, Teresa Cornette, Marshall King and Martha Short.

Bruce E. McLane, McLane & McLane, Marion, for appellant Marilyn Gallion.

Charles E. Herriman, Phillip E. Stephenson, Browne Spitzer Herriman Browne Stephenson & Holderead, Marion, for appellees.

SHIELDS, Presiding Judge.

Appellants-plaintiffs Martha Short, Daniel Hodge, Teresa Cornette, Marshall King, and Marilyn Gallion appeal the trial court's grant of summary judgment against them in their action against appellees-defendants Nor–Cen, Inc., Lloyd Holt, Jack Colescott, Jules Walker, Michael Barney and Wayne Folkerth (Nor–Cen), contending that issues of material fact exist which make the grant of summary judgment erroneous.

We reverse in part and affirm in part.

### FACTS

The facts are undisputed. In 1980, Nor–Cen purchased a two-story building at 303 North Washington Street, Marion, Indiana and divided it into apartments. The front upstairs apartment had only one stairway exit leading outside to the ground level of the building.

In February, 1982, Short rented the downstairs front apartment and lived there with her granddaughter, Misty Cornette. In May of 1982 Short also rented the front upstairs apartment so that her daughter, Teresa Cornette, and Teresa's children, Daniel Hodge, Tiffany Cornette, and Shaya Cornette could live in the downstairs apartment. Short and Misty moved to the upstairs apartment. Teresa and the other three children, with Nor–Cen's knowledge, also moved into the upstairs apartment pending their move to the downstairs apartment. The final occupant of the upstairs apartment was Marilyn Gallion, who apparently sub-let one of the rooms in the upstairs apartment from Short without Nor–Cen's knowledge.

On the night of May 24, 1982, Short left for work just as Teresa Cornette and Marshall King returned to the apartment. The

ground level entrance to the upstairs apartment had two doors, a storm door with a lock and a sturdy wooden door with an outside lock and an inside deadbolt lock. Teresa said she could have left these doors unlocked after she and King entered. That night, Daniel, Tiffany, and Shaya slept on mattresses on the living room floor, while Gallion and Misty slept in the front bedroom. King and Teresa went to sleep in the master bedroom. In the early morning hours, an unknown individual entered the downstairs foyer, spread an accelerant in the upstairs hallway, on the stairs, and in the lower foyer, and then started a fire which quickly spread into Short's upstairs apartment.

After Gallion alerted the others of the spreading fire, she and the others began searching for a means of escape. When some of the windows would not open properly, they were broken to provide a means of escape. Gallion and Teresa jumped out a window they broke in the master bedroom. King broke a living room window and helped Tiffany and Daniel to exit. King was unable to save Shaya and Misty before he exited through the window and lost consciousness. The two children died in the fire.

This action against Nor–Cen was filed in 1982 for personal injuries, based on negligence, strict liability, and breach of the warranty of habitability. In part, the complaint asserted Nor–Cen's failure to provide workable windows and a second means of egress in contravention of Marion City Ordinance No. 11–1960. On May 6, 1986, the trial court granted a motion by Nor–Cen for summary judgment, setting forth the undisputed facts and its conclusions based thereon.

### ISSUES

Appellants raise two issues containing several subissues, which we restate as follows:

1. Did the trial court err in concluding that Nor–Cen's alleged violation of a city ordinance could not support appellants' negligence claims?

2. Did the trial court err in determining personal injuries are not recoverable in a breach of warranty of habitability claim?[1]

### DISCUSSION

Before moving to the first issue, we repeat the oft-stated standard for reviewing a grant of summary judgment. Summary judgment is appropriate when the relevant documents together with affidavits and testimony demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Brown v. Northern Indiana Pub. Serv. Co.* (1986), Ind.App., 496 N.E.2d 794, *trans. denied;* Ind. Rules of Procedure, Trial Rule 56(C). This court, while standing in the shoes of the trial court, must view all evidence in a light most favorable to non-moving parties and likewise will resolve any doubt as to a fact or inference in their favor. *Id.* The burden is on the appellants, however, to demonstrate reversible error. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Id.* We may affirm the grant of summary judgment on any theory or basis found in the record, so that even though the trial court may have relied on one theory, we can review the pertinent materials and come to a conclusion supported by a different theory. *See Howard v. H.J. Ricks Constr. Co.* (1987), Ind.App., 509 N.E.2d 201, *trans. denied.*

### I.

Generally, the common law does not impose a duty on a landlord to protect tenants from injuries due to defective conditions on the property once possession and control of the property has been surrendered. *See Great Atlantic & Pacific Tea Co. v. Wilson* (1980), Ind.App., 408 N.E.2d

---

1. Appellants do not dispute the trial court's adverse judgment on the strict liability claim on this appeal.

144. One exception to the general rule is that a tenant may recover for injuries due to a defective condition of the rented property if the tenant shows the landlord either agreed to make repairs or was negligent in making repairs. *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690; *Hunter v. Cook* (1971), 149 Ind.App. 657, 274 N.E.2d 550; *Stover v. Fechtman* (1966), 140 Ind.App. 62, 222 N.E.2d 281; *Rene's Restaurant Corp. v. Fro–Du–Co Corp.* (1965), 137 Ind.App. 559, 210 N.E.2d 385. However, here the facts reveal no agreement by Nor–Cen to repair the windows or provide a second exit.[2]

 Another exception is that a landlord may be held liable for personal injuries caused by latent defects known to the landlord but unknown to the tenant which the landlord fails to disclose. *See Zimmerman*, 441 N.E.2d at 693–94. Also, a landlord has a duty to maintain, in safe condition, parts of the building used in common by the tenants, and over which the landlord retains control. *Slusher v. State* (1982), Ind.App., 437 N.E.2d 97. Here, appellants failed to offer facts showing that the alleged defective conditions were latent and unknown to them, and known to Nor–Cen. Moreover, the facts establish that common areas are not implicated in appellants' claim.

 Finally, the unexcused or unjustified violation of a duty prescribed by statute or ordinance constitutes negligence per se if the statute is intended to protect the class of persons in which plaintiff is included and against the risk of the type of harm which has occurred as a result of its violation.[3] *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176. Hence, a landlord may be liable to a tenant because of negligence which arises from the violation of a duty imposed by statute or ordinance.

 Appellants amended complaint alleges that their damages were proximately caused by Nor–Cen's failure to provide a second means of egress in violation of Marion City Ordinance No. 11–1960. The ordinance provides in relevant part:

Sec. 4. No person shall ... let to another for occupancy any dwelling or dwelling unit, for the purpose of living, sleeping, cooking, or eating therein, which does not comply with the following requirements....

Sec. 4.9 Every dwelling unit shall have a minimum of two safe, unobstructed means of egress leading to safe and open space at ground level.

The trial court found, based on a reading of Sec. 5.2 [4] of the same ordinance, that the two egress requirement of the ordinance was not a safety measure, but promulgated only to assure adequate light and ventila-

---

2. Nor–Cen denied it ever received any complaints about the windows from Short. It also believed the upstairs apartment's windows were easily operable. Short recalled mentioning that the windows needed repairs to a workman who had fixed her shower and who she believed was a "part-owner". Short asked the workman "to see [an agent of Nor–Cen] about getting [a window] fixed, and he said, yes, he would talk to him." *Record* at 469. Nor–Cen presumed the workman was Mike Barney (Barney); its licensed plumber. Assuming the man Short spoke to was an agent of Nor–Cen, the facts of this conversation do not allow the inference that Nor–Cen affirmatively accepted the duty to repair. *See Stover v. Fechtman* (1966), 140 Ind.App. 62, 222 N.E.2d 281 (discussion between landlord and tenant failed to disclose affirmative acceptance of duty).

3. The same is not true of an administrative regulation, the violation of which has been held to be only evidence of negligence. *See Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690; *Second National Bank v. Sears, Roebuck* (1979),

181 Ind.App. 1, 390 N.E.2d 229; *Town of Kirklin v. Everman* (1940), 217 Ind. 683, 29 N.E.2d 206. Therefore, appellants' claim of negligence could not survive a motion for summary judgment if the duty element of their claim rested solely upon the existence of an applicable administrative regulation.

4. Section 5.2 of the Marion City Ordinance No. 11–1960 reads:

Every habitable room shall have at least one window or skylight which can easily be opened, or such other device as will adequately ventilate the room. The total of openable window area in every habitable room shall be equal to at least 45 percent of the minimum window area size or minimum skylight-type window size, as required in subsection 5.1 of Section 5 of this ordinance, except where there is supplied some other device affording adequate ventilation and approved by the Health Inspector and Fire Inspector jointly.

tion. While it is true that not all the sections of the ordinance are safety measures, Section 4.9 clearly anticipates the increased risk of injury to a dwelling's occupants if they have but one route of egress in case of fire or other disasters necessitating rescue or escape. This leads us to the inescapable conclusion it was enacted as a safety measure. In addition, other inhabitants and reasonably-anticipated guests are within the class of persons the ordinance was enacted to protect. The duties and liabilities a landlord owes to the tenant extend to the tenant's social guests. *See Slusher v. State* (1982), 437 N.E.2d at 99. Therefore, appellants made a prima facie showing that the ordinance imposed upon Nor–Cen a duty to provide a second means of egress, the breach of which constitutes negligence per se in the absence of justification or excuse.

■ Nor–Cen argues that summary judgment was appropriate because its failure to provide other means of egress did not proximately cause appellants' injuries. In support of this claim, Nor–Cen invokes *Welch v. Railroad Crossing Inc.* (1986), Ind.App., 488 N.E.2d 383 and the Restatement (Second) of Torts § 448 (1965). The principle, as argued by Nor–Cen, simply stated, is that an unforeseeable, willful criminal act by a third party which intervenes between the alleged negligent act and the injury, breaks the causal connection between the negligent act and the injury, and, therefore, liability does not exist. Nor–Cen posits that the only reasonable inference arising from the undisputed facts before us is that the unexpected, intentional, and criminal act of the arsonist who entered the unlocked door of the apartment cut off any potential liability on Nor–Cen's part.

While Nor–Cen correctly states the rule of *Welch* and the Restatement, its application of the rule to these facts is faulty. *Welch* involved an incident where a patron of a tavern was intentionally stabbed by another patron. She alleged the tavern owner violated a statute which prohibited the serving of alcoholic beverages to patrons who were already intoxicated, and

that the violation proximately caused her injuries. This court held that the intentional stabbing, unlike damage caused by an inebriated driver, unforeseeably intervened between the tavern owner's neglient act of serving an intoxicated person and the injury to the plaintiff.

Here, the landlord's act of failing to provide a second means of egress is an act which generates an unreasonable amount of risk when there is a disaster necessitating escape or rescue. Fire, whether by accident or design, is not an intervening event which breaks the causal connection between the act of failing to provide a second means of egress and the injury occasioned by the inability to escape; it is merely an event in the chain of causation.

If the claim here was that Nor–Cen's failure to put in a second egress increased the risk of the occurrence of fire, or increased the risk of the occurrence of arson, Nor–Cen's reasoning might then be correct. However, that is not appellants' claim. An unforeseeable intervening event here would be an act perpetrated by the arsonist which would have kept the occupants from escaping. For example, if the arsonist had locked the occupants of the apartment in a closet and thereby prevented their escape from the fire, the causal chain would be broken. However, an injury occasioned by the inability to escape a fire in an apartment is a foreseeable incident of failing to provide the required alternate means of egress. Because the undisputed facts do not negate the elements of a claim of negligence, appellants' claim should have survived summary judgment. Therefore, the trial court erred in granting Nor–Cen's motion on appellants' negligence claim.

## II.

The trial court did not err in granting summary judgment on the breach of the warranty of habitability claim.

■ Although Indiana courts recognize the implied warranty of habitability in the context of landlord-tenant disputes, we have yet to consider whether the implied warranty provides a basis for relief on claims of personal injury. Appellants' re-

liance on *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, *trans. denied,* as authority for such action is unjustified. In *Kahf,* this court disposed of the plaintiffs' personal injury claim on the ground that the named defendants were not responsible for the damages claimed because they were not the parties from whom the plaintiffs had leased their apartment. Hence this court never reached the issue of whether the alleged breach of warranty would support a claim for personal injuries.

Here, because appellants fail to present a compelling argument for the extension of the warranty of habitability to personal injury claims, we leave the issue to another time. The trial court properly granted summary judgment on this issue.

Judgment on the negligence claim is reversed and remanded for further proceedings. In all other respects, the judgment is affirmed.

RATLIFF, C.J., concurs.

BUCHANAN, J. dissents in part and concurs in part, with separate opinion.

BUCHANAN, Judge, dissenting in part and concurring in part.

I must dissent to the portion of the majority opinion which concludes that the trial court erred in granting Nor–Cen summary judgment on the negligence claim. The majority's opinion extends Nor–Cen's legal obligation beyond the pale of reason to protect Appellants [hereinafter Short and Guests].

Even had Nor–Cen been negligent in failing to provide a second means of egress as required by the city ordinance, Short and Guests had the burden to prove not only that the violation was the cause in fact of their injuries, but that Nor–Cen was legally responsible, i.e., that Nor–Cen's violation was the proximate cause of their injuries. *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546; *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383; *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176, *trans. denied;* 57 AM.JUR.2D *Negligence* § 142 (1971). Short and Guests

failed to meet this burden, and therefore summary judgment on the negligence issue was appropriate.

A firmly established rule has been with us a long time, that:

"when between an alleged act of negligence and the occurrence of an injury, there intervenes the wilful, malicious and criminal act of a third party which causes the injury and which could not' reasonably have been foreseen by the allegedly negligent party, the causal chain between the negligence and the injury is broken."

*Welch, supra,* at 390 (quoting *Estate of Mathes v. Ireland* (1981), Ind.App., 419 N.E.2d 782, 785); *Dudley Sports Co. v. Schmitt* (1972), 151 Ind.App. 217, 279 N.E.2d 266, *trans. denied; Riesbeck Drug Co. v. Wray* (1942), 111 Ind.App. 467, 39 N.E.2d 776, *trans. denied; McIntosh v. Pennsylvania R.R. Co.* (1941), 111 Ind. App. 550, 38 N.E.2d 263; *see also City of Mobile v. Largay* (1977), Ala., 346 So.2d 393; *7735 Hollywood Boulevard Venture v. Superior Court* (1981), 116 Cal.App.3d 901, 172 Cal.Rptr. 528; *Graham v. M & J Corp.* (1980), D.C.App., 424 A.2d 103; *De Foe v. W. & J. Sloane* (1953), D.C.App., 99 A.2d 639; *Rosinek v. Cox Enters., Inc.* (1983), 166 Ga.App. 699, 305 S.E.2d 393; *C.S. v. Sophir* (1985), 220 Neb. 51, 368 N.W.2d 444; *Mitchell v. Pearson Enters.* (1985), Utah, 697 P.2d 240. *See generally* KEETON & PROSSER ON THE LAW OF TORTS § 44 (W. Keeton 5th ed. 1984); RESTATEMENT (SECOND) OF TORTS §§ 442B and 448 (1965); Annot., 43 A.L.R.3D 331, § 9 (1972). The third party is said to have "deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." RESTATEMENT (SECOND) OF TORTS § 442B comment c.

The criminal act of arson was not a reasonably foreseeable consequence of Nor–Cen's alleged violation of the ordinance and therefore superceded any negligence on the part of Nor–Cen. *See Hercules, Inc. v. Lewis* (1983), 168 Ga.App. 688, 309 S.E.2d 865 (defendant's alleged negligence in leaving trailer parked on side of road was not proximate cause of injury as a matter of

law because criminal act of arson was not reasonably foreseeable consequence of the defendant's act); *East Ramapo Cent. School Dist. v. Orangetown–Monsey Hebrew School* (1988), A.D., 529 N.Y.S.2d 576 (intervening criminal act of arson not reasonably foreseeable consequence of defendant's negligence); *see also City of Mobile, supra; 7735 Hollywood Boulevard, supra; Rosinek, supra; Welch, supra; C.S., supra.*

The uncontradicted facts here show that Nor–Cen had no knowledge of any criminal activities in the neighborhood, including prior acts or threats of arson. *Record* at 717. Nor–Cen provided workable locks on the doors to the entrance of the apartment and there was no argument that it failed to maintain adequate security to prevent entrance by intruders.

The majority vaults over the proximate cause hurdle by concluding that fire, whatever its origin, was foreseeable. Yet, a landlord is not an insurer of safety. The foreseeability element does not require that the precise hazard or consequence be foreseen, but "neither does it encompass *anything* which might conceivably occur." *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211, 1215, *trans. denied* (emphasis supplied). The scope of foreseeable risk following from the landlord's negligence should not be widened to include risk of fire hazard generally. "[T]he doctrine of superseding, intervening criminal acts may not be avoided simply by generalizing the classification of risk." *Hercules, supra* at 689, 309 S.E.2d at 867. So, it was the intervening act of the arsonist in setting the fire which led to the injury of Short and Guests; without his criminal act, the injury would not have occurred.

Contrary to the majority's assertion, the manner in which the fire was set did prevent the escape by Short and Guests. The arsonist carefully spread the accellerant in the upstairs hallway (outside the upstairs apartment door), down the stairs, and in the lower foyer before setting the entire area ablaze. Obviously, the arsonist's mind was bent on preventing any means of escape. Even had Nor–Cen provided a sec-

ond means of egress, the inference is that the arsonist was intent on his evil deed in any event.

I would affirm the trial court's decision in all respects.