Anthony J. VANDENBOSCH,
Appellant–Plaintiff,

v.

Michael J. "Mick" DAILY and Mary
D. Daily, Appellees–Defendants.

No. 34A02–0204–CV–283.

Court of Appeals of Indiana.

April 2, 2003.

David W. Stone IV, Stone Law Office &
Legal Research, Anderson, IN, J. Michael
Antrim, Jordan D. Church, Church,
Church, Hittle & Antrim, Noblesville, IN,
Attorneys for Appellants.

George T. Patton, Jr., Sarah Steele
Riordan, Bose McKinney & Evans LLP,
Indianapolis, IN, Scott P. Sullivan, Noel &
Noel, Kokomo, IN, Attorneys for Appel-
lees.

## OPINION

VAIDIK, Judge.

### Case Summary

Tenant Anthony Vandenbosch, who was
severely injured when he slid out of a
second-story window headfirst during an
apartment fire, appeals the trial court's
entry of summary judgment in favor of

landlords Michael and Mary Daily. Specifically, Vandenbosch contends that there is a genuine issue of material fact as to whether the Dailys owed him a duty and whether their breach of that duty proximately caused his injuries, thereby precluding the entry of summary judgment. Although we conclude that the Dailys assumed a duty to provide a portable fire escape ladder in a safe, operating condition, we nevertheless conclude that even if the Dailys failed to do so, their failure did not proximately cause Vandenbosch's injuries because he did not attempt to use the ladder before exiting the window. We therefore affirm the trial court's entry of summary judgment in favor of the Dailys.[1]

### Facts and Procedural History

The Dailys own a rental property at 405 West Walnut Street in Kokomo, Indiana. The rental property is located above a four-car garage and is accessed through a stairway in the garage. On January 2, 1996, Vandenbosch and Michael entered into an Assisted Lease Agreement for the property. The United States Department of Housing and Urban Development (HUD) subsidized the lease through the Housing Choice Voucher Program, formerly known as the Section 8 Existing Housing Certificate Program. The Kokomo Housing Authority (KHA) administers this program in Kokomo. Beginning in 1995, the KHA conducted annual inspections of the property to ensure compliance with the quality housing standards set forth in 24 C.F.R. § 882.109. In December 1995, the KHA inspected the property and marked "FAIL" next to the "Fire Exits" column of the HUD Inspection Checklist, noting that Michael needed to "install a portable fire escape ladder to use as an alternate means of egress in the event of an emergency." Appellant's App. p. 308, 311. The KHA required the portable fire escape ladder although federal regulations did not. Michael subsequently purchased a portable fire escape ladder for the property, and on December 20, 1995, the KHA approved the property for HUD assistance.

The KHA conducted annual inspections of the property in 1996, 1997, 1998, and 1999—all of which Michael passed. On September 5, 1999, a fire was intentionally set inside a vehicle that was parked in the garage underneath Vandenbosch's apartment. The fire spread throughout the garage and eventually into Vandenbosch's apartment. Vandenbosch detected the fire when he saw the window above his stairway break and flames and smoke enter through the window. Vandenbosch called 911, and the fire department arrived minutes later. When the fire department arrived, it rang Vandenbosch's doorbell, but he decided not to exit through the stairway because of the smoke. Vandenbosch then proceeded to his bedroom, where he opened the window and slid out headfirst. Vandenbosch did not attempt to use the portable fire escape ladder, which was underneath his bed at the time. As a result of his fall, Vandenbosch is unable to walk, has no control over his bladder or bowels, requires a feeding tube, and has minimal use of his hands.

Vandenbosch filed a two-count complaint against Michael on August 4, 2000. Count I alleged negligence, and Count II alleged breach of lease. Vandenbosch amended his complaint on February 26, 2001, to add Mary as a defendant. On September 14, 2001, the Dailys filed a motion for summary judgment. Following a hearing, on March 6, 2002, the trial court issued extensive findings of fact and conclusions thereon granting summary judgment in favor of the Dailys. Specifically, the trial court concluded that the Dailys did not owe Van-

[1]. We hereby deny the Dailys' motion to strike portions of Vandenbosch's reply brief.

denbosch a duty, but even if they did, their breach of that duty did not proximately cause his injuries. This appeal ensued.

## Discussion and Decision

Vandenbosch appeals the trial court's entry of summary judgment in favor of the Dailys. In reviewing a trial court's ruling on a motion for summary judgment, this Court faces the same issues that were before the trial court and follows the same process. *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258, 1264 (Ind.Ct.App. 2002), *trans. denied.* We do not weigh evidence but, instead, liberally construe the facts in a light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only when the designated evidence demonstrates that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Merrill,* 771 N.E.2d at 1264.

The party appealing a summary judgment ruling has the burden of persuading this Court that the grant or denial of summary judgment was erroneous. *Merrill,* 771 N.E.2d at 1264. On appeal, we determine whether there is a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* We will affirm the grant of summary judgment on any legal basis supported by the designated evidence. *Id.* Further, our review is not changed by the trial court's entry of findings of fact and conclusions thereon. *Id.* Although the findings and conclusions provide valuable insight into the trial court's decision, they are not binding upon this Court. *Id.*

In this case, the trial court entered summary judgment on Vandenbosch's negligence claim. The tort of negligence is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a breach of that duty, that is, a failure on the part of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. *Kincade v. MAC Corp.,* 773 N.E.2d 909, 911 (Ind.Ct.App. 2002); *Merrill,* 771 N.E.2d at 1264. Summary judgment is rarely appropriate in negligence cases; however, when the undisputed material facts negate at least one element of the plaintiff's claim, judgment as a matter of law is appropriate. *Kincade,* 773 N.E.2d at 911; *Merrill,* 771 N.E.2d at 1264.

### I. Duty

Vandenbosch contends that the trial court erred in concluding that the Dailys did not owe him a duty. Specifically, he argues that the undisputed material facts show that the Dailys assumed a duty of providing an emergency ladder in a safe, operating condition, that they violated a duty prescribed by statute or ordinance concerning the thickness of the door leading into his apartment and the size of the bedroom window, and that they had a duty to maintain common areas in a safe condition. Generally, the common law does not impose a duty on landlords to protect tenants from injuries due to defective conditions on the property once possession and control of the property have been surrendered. *Hodge v. Nor–Cen, Inc.,* 527 N.E.2d 1157, 1159 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* This is also known as the doctrine of caveat lessee, or let the lessee beware, which essentially provides that a landlord who gives his tenant full control and possession of leased property will not be liable for the personal injury sustained by the tenant or other persons lawfully upon the leased property. *Hutchens v. MP Realty Group–Sheffield Square Apartments,* 654 N.E.2d 35, 39 n. 1 (Ind. Ct.App.1995), *trans. denied.* However, there are several exceptions to this doctrine. One exception is when a landlord

assumes to act on behalf of a tenant. *Vertucci v. NHP Mgmt. Co.*, 701 N.E.2d 604, 607 (Ind.Ct.App.1998). Another exception is the unexcused or unjustified violation of a duty prescribed by statute or ordinance. *Hodge*, 527 N.E.2d at 1160. A third exception is a landlord has a duty to maintain in a safe condition those parts of the building used in common by tenants and over which the landlord retains control. *Id.* Vandenbosch argues that all three exceptions apply in the present case.

### A. Assumption of Duty

■ Vandenbosch first argues that the Dailys "assumed the duty of providing an emergency ladder which was in safe operating condition[.]" Appellant's Br. p. 13.

> [A] duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

*Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 915 (Ind.Ct.App.2001) (quotation omitted). While the existence and extent of such duty are ordinarily questions for the trier of fact, when there exists no genuine issue of material fact, assumption of a duty may be determined as a matter of law. *Id.; see also Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 975 (Ind.1999).

Here, the undisputed evidence shows that the KHA required the Dailys "to install a portable fire escape ladder to use as an alternate means of egress in the event of an emergency" in order to pass the inspection and receive KHA's approval for HUD assistance. Appellant's App. p. 311. The Dailys could have chosen not to supply a ladder and therefore not get HUD assistance for that property. Nevertheless, they chose to supply the ladder. And by so choosing, the Dailys concomitantly assumed a duty to supply a ladder in a safe, operating condition. Whether the ladder was in a safe, operating condition at the time of the fire does not affect whether a duty exists, but whether the Dailys breached that duty. Based on the undisputed evidence, we conclude as a matter of law that the Dailys assumed a duty to provide a portable fire escape ladder in a safe, operating condition.[2]

### B. Violation of Statute or Ordinance

■ Vandenbosch next argues that the Dailys violated provisions contained in the Indiana Administrative Code regulating the thickness of doors between garages and residences and the size of bedroom windows. The unexcused or unjustified violation of a duty prescribed by statute or ordinance constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and against the risk of the type of harm which has occurred as a result of its violation. *Hodge*, 527 N.E.2d at 1160. "Hence, a landlord may be liable to a tenant because of negligence which arises from the violation of a duty imposed by statute or ordinance." *Id.*

Here, Vandenbosch asserts that the Dailys violated provisions in 60 IAC 3–1–4, which are amendments to the One and

---

2. Vandenbosch, who testified in his deposition that he was physically and mentally disabled before the fire, also argues that because of his disabilities, the duty should also include "individualized instructions" on how to use the ladder. Appellant's Br. p. 24. Just because the Dailys assumed a duty to provide a ladder in a safe, operating condition by virtue of the KHA's requirement does not mean that this duty includes individualized instructions, especially considering the ladder came with instructions including pictures.

Two Family Dwelling Code, that were in effect at the time the Dailys converted the space above the garage into an apartment in 1980–81. Specifically, Vandenbosch points to Section R–210, which required openings between garages and residences to have solid wood doors of not less than 1 3/8 inches in thickness, and Section R–211, which required all egress windows from sleeping rooms to have a minimum net clear opening of 4.75 square feet, a minimum net clear opening height dimension of twenty-four inches, and a minimum net clear opening width dimension of eighteen inches. The undisputed evidence shows that Vandenbosch's door and bedroom window did not meet these requirements. However, the Dailys respond that this is of no moment because the Indiana Administrative Code is not a statute or ordinance, and therefore they are not liable to Vandenbosch on this ground.

In *Hodge*, this Court addressed this issue. In noting that the unexcused or unjustified violation of a duty prescribed by statute or ordinance constitutes negligence per se, the court observed that "[t]he same is not true of an administrative regulation, the violation of which has been held to be only evidence of negligence." *Id.* at 1160 n. 3. The court went on to hold that the "appellants' claim of negligence could not survive a motion for summary judgment if the duty element of their claim rested solely upon the existence of an applicable administrative regulation." *Id.* Vanden-

bosch acknowledges this authority but nevertheless asserts that "there would appear to be no logical reason to continue to adhere to the position that a violation of properly adopted safety regulations [is] somehow of less significance as proof of negligence than the same measure would be if it had been enacted as a statute or ordinance." Appellant's Br. p. 18. As Vandenbosch has presented no persuasive argument in favor of overruling this authority, we continue to adhere to it. Therefore, we conclude as a matter of law that the Dailys' violation of the provisions in the Indiana Administrative Code regulating the thickness of doors between residences and garages and the size of bedroom windows is not a proper basis for imposing liability on them and therefore cannot survive a motion for summary judgment.[3]

### C. Common Areas

Vandenbosch lastly argues that the Dailys had a duty to maintain the "stairway from the garage to [his] apartment and the door at the foot of such door" because it "qualified as a common area and [was] within the control of the landlord." Appellant's Br. p. 22. Vandenbosch is correct that "a landlord does have a duty to maintain in a safe condition common areas over which he retains control." *Goddard by Goddard v. Weaver*, 558 N.E.2d 853, 854 (Ind.Ct.App.1990). However, here the undisputed evidence shows that Vandenbosch leased the garage space leading into

---

**3.** We observe that this result might not be the same under the new amendments to Indiana Code chapter 32–31–8, which apply "only to dwelling units that are let for rent after June 30, 2002." Ind.Code § 32–31–8–1(a). Indiana Code § 32–31–8–5, entitled "Duties of landlord at commencement of and during occupancy," provides that a landlord "shall ... [c]omply with all health and housing codes applicable to rental premises." Ind. Code § 32–31–8–5(2). This subsection does not appear to restrict a landlord's compliance to just statutes and ordinances. A tenant may bring an action to enforce this obligation if the tenant gives the landlord notice of the landlord's noncompliance and the landlord refuses or fails to repair or remedy the condition within a reasonable amount of time. Ind.Code § 32–31–8–6(a), (b). If successful, the tenant may recover, among other things, actual damages, consequential damages, attorney's fees, and court costs. I.C. § 32–31–8–6(d).

his apartment for an additional thirty-five dollars per month. The undisputed evidence also shows that because Vandenbosch only used the garage space to store his bicycle, he allowed another tenant to park her car there. The fact that Vandenbosch gave permission to another tenant to use the garage space does not convert it into a common area. Furthermore, because Vandenbosch leased the garage space, he has failed to show that the Dailys retained control over it. Because the area at issue was not a common area and the Dailys did not retain control over it, we conclude as a matter of law that the Dailys cannot be held liable to Vandenbosch under this exception.

## II. Proximate Cause

■ Because we concluded that the Dailys assumed a duty to provide a portable fire escape ladder in a safe, operating condition, we now must examine whether, assuming a breach on the part of the Dailys to do so, that breach proximately caused Vandenbosch's injuries. Vandenbosch contends that a genuine issue of material fact exists on this element because a "jury could easily find that the landlord's simply giving the boxed ladder to his tenant without giving him instructions for the use and without having set the spacers for use contributed to the injury and therefore was a proximate cause of the injury." Appellant's Br. p. 23.

"A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances." *Munsell v. Hambright,* 776 N.E.2d 1272, 1279 (Ind.Ct. App.2002), *trans. denied.* "Proximate cause requires, at a minimum, that the

harm would not have occurred but for the defendant's conduct." *Id.* The plaintiff's burden may not be satisfied with evidence based merely upon supposition or speculation. *Marquez v. Mayer,* 727 N.E.2d 768, 772 (Ind.Ct.App.2000), *trans. denied.* Although proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *Munsell,* 776 N.E.2d at 1279.

Here, the undisputed evidence shows that Michael gave Vandenbosch a portable fire escape ladder at the beginning of his tenancy. The ladder, which was in a box, was accompanied by instructions on its use. Vandenbosch put the box underneath his bed and never read the instructions. He did not even attempt to use the ladder before exiting the bedroom window. Notwithstanding these undisputed facts, Vandenbosch points to an affidavit from his expert Patrick Murphy, which provides that when he inspected the ladder after the fire, the chains were tangled, the ladder was not properly folded, and the spacers had not been installed. However, Vandenbosch testified in his deposition that he did not use the ladder because his bedroom window did not have a sill [4]—not because the chains were tangled, the ladder was not properly folded, or the spacers had not been installed. In fact, Vandenbosch never opened the box containing the ladder before the fire so he had no knowledge of the ladder's condition until after the fire. In light of the · fact that the ladder was accompanied by instructions on its use, Vandenbosch did not attempt to use the ladder before exiting his window, and Vandenbosch testified that he did not use the ladder because his window did not have a sill (and not because the ladder

---

**4.** Vandenbosch makes no argument on appeal that his sill would not accommodate the ladder. Our review of the photograph of Van-

denbosch's bedroom window and the instructions accompanying the ladder reveal no sill was necessary.

itself was not in working order), we find that the only conclusion that can be drawn from these facts is that assuming the Dailys breached their duty to supply a ladder in a safe, operating condition, that breach did not proximately cause Vandenbosch's injuries.

Judgment affirmed.

DARDEN and NAJAM, JJ., concur.

