Sherri **ZUBRENIC**, Appellant–Plaintiff,

v.

**DUNES VALLEY MOBILE HOME PARK, INC., Appellee–Defendant.**

No. 64A03–0302–CV–63.

Court of Appeals of Indiana.

Oct. 22, 2003.

---

Lloyd P. Mullen, Hagberg, Mullen & LaTulip, P.A., Schererville, IN, Attorney for Appellant.

Martin J. Gardner, Kelly A. Baer, Huelat & Gardner, LLC, South Bend, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Sherri Zubrenic appeals from the trial court's order granting summary judgment in favor of Dunes Valley Mobile Home Park ("Dunes Valley") on Zubrenic's claim for damages arising out of her fall upon property located in the mobile home park. She presents two issues for our review: (1) whether Dunes Valley owed her a duty of care, and (2) whether there was a genuine issue of material fact as to the possession and control of the stairway from which she fell.

We reverse.

On April 1, 2000, Zubrenic fell while on the stairway she was using to exit the mobile home which Tim Hatfield leased from Dunes Valley. At that time, Zubrenic was living in Hatfield's mobile home. The mobile home was equipped with a temporary mobile stairway which had no handrail. As a result of the fall, she claims that she sustained injuries, incurred medical expenses, and lost wages. In the complaint which she filed against Dunes Valley, she alleged both negligence and breach of the warranty of habitability [1] on the part of Dunes Valley.

At a hearing on the motion for summary judgment, Zubrenic challenged the motion by asserting that Dunes Valley owed her a duty of care to make the temporary stairway safe and that Dunes Valley failed to inspect the stairway to determine its condition. For that assertion, she relied upon the Restatement (Second) of Torts. Further, Zubrenic claimed that Dunes Valley, as a landlord, owed her a duty to provide a safe means of ingress and egress from the mobile home. Following a hearing upon the motion for summary judgment, the trial court granted the motion.

Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied.* The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. *Id.* If the moving party meets these requirements, the burden then shifts to the nonmovant to establish

1. Zubrenic presents no argument upon appeal that Dunes Valley breached a warranty of habitability.

genuine issues of material fact for trial. *Id.*

In reviewing the grant or denial of a motion for summary judgment, we are bound by the same standard as the trial court. *Id.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We do not reweigh the evidence, but rather, liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.* Summary judgment is rarely appropriate in negligence cases because issues of contributory fault, causation, and reasonable care are more appropriately left for determination by the trier of fact. *Id.*

To recover under a theory of negligence, a party must establish: (1) a duty on the part of the defendant owed to the plaintiff, (2) a breach of that duty, and (3) an injury to the plaintiff proximately caused by the breach. *Id.* Generally, the existence of a legal duty owed by one party to another is a pure question of law. *P.T. Barnum's Nightclub v. Duhamell,* 766 N.E.2d 729, 737 (Ind.Ct.App.2002), *trans. denied.* However, factual questions may be interwoven, rendering the existence of a duty a mixed question of law and fact to be determined by the fact-finder. *Baxter v. I.S.T.A. Ins. Trust,* 749 N.E.2d 47, 55 (Ind. Ct.App.2001).

In *Hammock,* this court provided a brief discussion of the recent history of negligence law and the imposition of a duty upon a party in a negligence lawsuit. 784 N.E.2d at 498–99. We concluded that "the duty is that of reasonable care under the circumstances. That duty never changes. It always exists although the circum-stances may differ from case to case." *Id.* at 499. Nonetheless, we recognized that a change in that principle may have been effectuated by our Supreme Court in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991). In *Webb,* our Supreme Court enumerated three factors which are to be balanced when considering whether one individual owes a duty to another: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.* at 995.

In *Hammock,* we were concerned with how to apply those three factors in light of the appearance that they created an overlap between the analysis to determine whether a duty existed and whether the defendant's conduct was the proximate cause of the injury. 784 N.E.2d at 499. That problem does not exist in this case. Rather, a new concern has arisen. At the time *Webb* was decided, it appeared to be the cornerstone of the analysis of whether a duty existed. However, we duly noted in *Hammock* an article written by Professor Jay Tidmarsh, reviewing Indiana tort law after the decision in *Webb,* in which he stated, " 'Indiana tort law is presently a confused patchwork of obligation and immunity.' " *Id.* (quoting *Tort Law: The Languages of Duty,* 25 IND.L.REV. 1419 (1992)). Since the time that we decided *Hammock,* our Supreme Court has made an announcement upon the use of the factors enumerated in *Webb.* That announcement was this:

"In our view, the three-part balancing test articulated in *Webb,*[sic] is a useful tool in determining whether a duty exists, but only in those instances where the element of duty has not already been declared or otherwise articulated. For example, there is no need to apply *Webb* to determine what duty a business owner owes to its [sic] invitees. The law

in this area is well settled: '[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct.' In like fashion for example, there is no need to apply *Webb* to determine the duty school authorities owe their students. This Court has long held they owe a duty to 'exercise reasonable care and supervision for the safety of the children under their control.'" *Northern Indiana Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (citations omitted).

In effect, this means that *Webb* was not and is not the cornerstone of duty analysis; rather, it is one additional brick to be used to establish duty, the foundation of a negligence claim. Nevertheless, now that it is clear that the *Webb* analysis is not the sole consideration when determining whether a duty exists, we are still faced with the task of determining when we turn to the *Webb* factors and when existing law has been "declared or otherwise articulated" so that we may say that duty is established or "well settled."

 In the area of negligence arising out of a landlord-tenant relationship, the law seems well established. Generally, the common law does not impose a duty upon a landlord to protect tenants from injuries due to defective conditions on the property once possession and control of the property has been surrendered. *Hodge v. Nor-*

*Cen, Inc.*, 527 N.E.2d 1157, 1159 (Ind.Ct. App.1988), *trans. denied.* One exception to the general rule is that a tenant may recover for injuries stemming from defective premises if the landlord expressly agrees to repair the defect and is negligent in doing so. *Houin v. Burger by Burger*, 590 N.E.2d 593, 597 (Ind.Ct.App.1992). A second historical exception is that the landlord may be held liable for injuries caused by latent defects of which the landlord was aware but which were unknown to the tenant and were not disclosed by the landlord. *Hodge*, 527 N.E.2d at 1160. A landlord also has a duty to maintain in safe condition the parts of the building used in common by the tenants and over which the landlord retains control. *Id.*

Under the facts before us, we find no answer in the exception to the general rule that landlords do not have a duty once the property is possessed and controlled by the tenant. Dunes Valley did not agree to make repairs to the stairway so it could not have assumed a duty under that theory. Further, Zubrenic cannot argue that the defect was latent and unknown to her but that Dunes Valley was aware of the defect.[2] This is so because Zubrenic claims that the harm she suffered was not only foreseeable but almost predictable because the stairway was "dangerous and defective." Appellant's Brief at 11. If Zubrenic was aware that the stairway was dangerous, the defect could not have been unknown to her and Dunes Valley could

---

**2.** The question exists as to whether the latent/patent distinction should be made when discussing the landlord's knowledge of a defect and whether the tenant was aware of it. In *McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243, 1245 (Ind.1997), our Supreme Court, in discussing the duty present when one supplies a defective chattel, acknowledged that the determination of a duty based upon a supplier's knowledge of potential defects is inconsistent with the broader evalua-

tion as to duty which is now required. The Court concluded that it is unsatisfactory to employ the latent/patent distinction when deciding the existence of a legal duty to inspect. *Id.* While we do not address whether the latent/patent distinction continues to exist when discussing landlord-tenant law, we do note that the distinction may no longer be valid under the current view of the existence of a duty.

not be subject to liability under that theory. *See Stover v. Fechtman*, 140 Ind.App. 62, 67, 222 N.E.2d 281, 284 (1966) (stating that the record disclosed that the defects to the stairway were in plain sight and were not the type which a lessee could not reasonably be expected to discover). Further, the stairway upon which Zubrenic fell was not part of a common area; therefore, a duty does not exist from application of that exception. Based upon these considerations, it appears that the only recourse for Zubrenic under landlord-tenant law is if Dunes Valley maintained control over the stairway so that Hatfield, with whom Zubrenic was living, had not taken possession of the property.

The rental agreement which existed between Dunes Valley and Hatfield states that Dunes Valley had "the sole right to determine what business enterprises, salesmen, etc. may enter the park, also including the lease space of tenants." Appendix at 54. Further, the agreement states that the tenant will furnish "Nipsco" for the mobile home.[3] *Id.* Finally, evidence designated by Zubrenic indicated that Dunes Valley maintained the right to mow Hatfield's lot and charge him $15.00 each time.[4]

While it is clear that Dunes Valley was maintaining some control over the premises, that control was unrelated to the use of the trailer or the stairway. Rather, Dunes Valley was seeking to maintain a certain decorum in the neighborhood. Dunes Valley did not assert that it would perform maintenance and repairs on the trailer, stairway, or the lot other than mowing the lot if the tenant did not keep it cut. In addition, the rental agreement which was designated as evidence clearly

states that the rental agreement was for "Lot # 112 Scot Ct." and not for the mobile home on lot 112. *Id.* Further, the agreement stated that Dunes Valley maintained the right to add damage charges to monthly rental or lot rent. Under these circumstances, it cannot be said that Dunes Valley retained control over the premises so that it was subject to liability arising out of a duty to maintain the stairway. Nor can it be said that Dunes Valley only relinquished control of the mobile home but retained control of the lot.

Although no duty existed on the part of Dunes Valley as a consequence of common law principles, Zubrenic has made the claim that Dunes Valley may be liable as the supplier of a chattel. In *McGlothlin v. M & U Trucking, Inc., supra*, 688 N.E.2d 1243, 1245 (Ind.1997), our Supreme Court determined that the appropriate considerations when deciding whether a supplier of a chattel owed a duty to a user of that chattel who was injured because the chattel was defective are found in Sections 388 and 392 of the Restatement (Second) of Torts. Relying upon *McGlothlin*, Zubrenic claims that the stairway was a chattel because it was temporary and mobile.

A chattel is defined as "[m]ovable or transferable property; esp., personal property." Black's Law Dictionary 229 (7th ed.1999). "A fixture is defined as 'a thing which originally was a chattel but which has become a part of the real estate by reason of attachment thereto by one having an interest therein.'" *Milestone Contractors, L.P. v. Indiana Bell Tel. Co., Inc.*, 739 N.E.2d 174, 177 (Ind.Ct.App. 2000) (quoting 14 INDIANA LAW ENCYCLOPEDIA, Fixtures § 1 (1959)), *trans. dismissed.*

---

3. We assume that "Nipsco" refers to the tenant providing electric service from the Northern Indiana Public Service Company, or NIPSCO as it is commonly referred.

4. The designated evidence was an interrogatory answer by Robert Jackson, the owner of Dunes Valley.

There is no evidence that the stairway here had been attached to the property so that it became a part of the real estate. Further, Dunes Valley did not designate any evidence which indicated that the stairway was not temporary or mobile as Zubrenic claimed. Finally, at the summary judgment hearing, Dunes Valley's counsel acknowledged that the stairway was "temporary" and "mobile." Transcript at 3. Based upon these considerations, we are bound to conclude that the stairway was a chattel.

Section 388 of the Restatement (Second) of Torts (1965)[5] states:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Section 392 states:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

■ In looking at both Sections of the Restatement, it is obvious that several facts must be shown. The first, and the most important, is that the stairway is dangerous. Dunes Valley has made no showing that the stairway was not dangerous. While we do not intend to imply that the lack of a handrail always renders a stairway dangerous, we do recognize that Dunes Valley has not carried its burden as the moving party to make a prima facie showing that the stairway was not dangerous. However, even though Dunes Valley has failed in that regard, Section 388 places liability upon the supplier only if he has knowledge of the dangerous condition and fails to warn the user. Nonetheless, comment k to Section 388 states that the supplier of the chattel has no duty to inform the user of the chattel of a dangerous condition if mere casual observation will disclose the condition. While Dunes Valley has maintained that it was not aware of the condition, Zubrenic claims that it should have been because of the obvious dangerous condition of the stairway due to the lack of a handrail. Zubrenic's knowledge that the stairway lacked a

---

**5.** We recognize that the Restatement (Third) of Torts: Products Liability (1997) has been issued since the time that *McGlothlin* was decided by our Supreme Court. Because our Supreme Court stated that Sections 388 and 392 incorporate the factors which are consistent with our jurisprudence regarding the determination of whether a duty exists, we continue to turn to them for guidance in our discussion of duty.

handrail, and her claim that it made the stairway dangerous, is fatal to her claim. Therefore, Dunes Valley can be subject to no liability under Section 388.

In regard to Section 392, Dunes Valley has not shown that the stairway was not provided to be used for the supplier's business. Dunes Valley argued both at the summary judgment hearing and upon appeal that the stairway was to be used for Hatfield's residential purposes. The question remains as to whether the stairway was also used to benefit Dunes Valley's business. Dunes Valley is in the business of leasing mobile homes and the lots upon which they sit. If Dunes Valley provided the stairway to aid in the leasing of the mobile home, it is logical to conclude that the stairway is provided for Dunes Valley's business purposes. On the other hand, if it can be shown that the use of the stairway was only to be a convenience for Hatfield, it is possible to conclude that the stairway was not provided for Dunes Valley's business purposes. *See* Section 392 cmt. d. In any event, Hatfield's use of the stairway for his purposes does not preclude the consideration that the stairway was provided for Dunes Valley's business purposes. Because Dunes Valley has not carried its burden in demonstrating that no genuine issue of material fact existed as to whether the stairway was provided for its business purpose, summary judgment was improper upon the issue of liability arising out Dunes Valley's duty as the supplier of a chattel.

The trial court's granting of summary judgment is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

RILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

The majority concludes that, of the several arguments made by Zubrenic in assailing the grant of summary judgment, only one has merit. As to that argument, the majority concludes that summary judgment was erroneous because "Dunes Valley has not carried its burden in demonstrating that no genuine issue of material fact existed as to whether the stairway was provided for its business purpose[.]" *Slip op.* at 809. I reject that argument, along with the others advanced by Zubrenic, and therefore respectfully dissent.

Restatement § 392 applies in situations where a party supplies a chattel to be used for the supplier's business purposes. Assuming the portable staircase constituted a chattel in this context, I cannot agree that it was to be used for Dune Valley's business purposes. I suppose there may be an oblique, theoretical connection between the staircase's use and Dunes Valley's business purposes. I believe, however, that a direct nexus is required before § 392 applies. A casual observer would undoubtedly describe the stairway's use as personal in that it was the primary means of ingress and egress for the mobile home's residents. The fact that we consider this matter in the context of a summary judgment proceeding in a personal injury lawsuit does not require that we suspend the ordinary understanding of the stairway's use and apply what I consider to be a strained analysis that flies in the face of common understanding. We should employ a straightforward inquiry into the staircase's use. In my view, such leads inescapably to the conclusion that the stairway was not used for Dunes Valley's business purposes. I would affirm the grant of summary judgment in favor of Dunes Valley.