Ben and Shona ERWIN, Individually as Parents, Natural Guardians, and Next–of–Friend of Their Minor Child D.E., Appellants–Petitioner

v.

Brenda ROE, Appellee–Respondent.

No. 16A01–0906–CV–312.

Court of Appeals of Indiana.

June 9, 2010.

W. Russell Sipes, Todd Barnes, George & Sipes, LLP, Indianapolis, IN, Attorneys for Appellants.

M. Michael Stephenson, Brady J. Rife, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Benjamin (Ben) and Shona (Shona) Erwin, individually and as parents of their son D.E. (collectively, the Erwins), appeal the trial court's grant of summary judgment in favor of Appellee–Defendant, Brenda Roe (Roe).

We affirm in part, reverse in part and remand for further proceedings.[1]

### ISSUES

The Erwins raise four issues on appeal, which we consolidate and restate as the following two:

(1) Whether the trial court abused its discretion by denying the Erwin's extension of time; and

(2) Whether Roe was negligent *per se* for failing to comply with provisions of both State and Federal statutes, including Ind.Code § 32–31–8–5 and the Federal Lead–Based Paint Hazard Reduction Act, 42 U.S.C.A. 4851, *et seq.*

### FACTS AND PROCEDURAL HISTORY

Roe has owned and rented out a house located in Westport, Indiana, since approximately 1997. On August 26, 2005, Roe entered into a written lease agreement with the Erwins, which was to begin September 1, 2005, and continue on a month to month basis. As part of the lease agreement, Roe was responsible for major repairs to the house, and the Erwins were responsible for minor maintenance such as mowing the grass and generally maintaining the property. The Erwins lived in the house with their four children until the end of October 2006.

Towards the end of September 2006, the Erwins began to notice that their two-year-old son, D.E., who had previously been diagnosed with mild development problems but had been making progress, was "backsliding." (Appellant's App. Vol. II, p. 176). Shona described the backsliding as D.E. going from being able to talk and communicate as a normal two-year-old to talking like an eleven-month-old child. Around that same time, Ben discovered D.E. chewing on what looked like a piece of paper, but what turned out to be a paint chip. Ben removed the paint chip from D.E.'s mouth and vacuumed up the peeled paint and paint chips they found on the floor in his room. Believing this was a single occurrence, Ben and Shona did not seek medical attention. However, the next day, Shona found another paint chip in D.E.'s mouth. She called the Decatur County Department of Family and Children and they recommended she contact the Board of Health. When she called the Board of Health, they told her to contact D.E.'s pediatrician to have his blood checked for unsafe levels of lead. The Erwins had all the children checked for

---

1. We held an oral argument in this case on February 25, 2010, at Wabash College in Crawfordsville, Indiana. We thank Wabash College for its hospitality in hosting the argument and counsel for their excellent advocacy.

lead, however, only D.E. tested positive and had elevated levels of lead in his blood. Due to D.E.'s positive test, the Board of Health came to the Erwin's house and performed a lead-based paint screening on the paint located in D.E.'s room. The test came back positive for lead-based paint. The Board of Health then contacted the Environmental Protection Team to assess the entire property. The assessment concluded that all the woodwork, baseboards, trim around the windows, and bathtub tested positive for lead.

Shona contacted Roe to inform her that D.E. had tested positive for lead. Roe, who claimed she had no prior knowledge that the house contained lead-based paint, did not immediately offer to correct the problem. Shortly thereafter, the Erwins moved out of the house. Roe did not repaint the house until after the Erwins vacated the property. Prior to this incident, Roe had not received any reports of lead concerns from any of the previous tenants of that house.

On January 29, 2008, the Erwins filed a Complaint against Roe. On March 20, 2008, Roe filed her answer and affirmative defense. On November 20, 2008, Roe filed a motion for summary judgment, together with her memorandum of law and designation of evidence. On December 18, 2008, the Erwins responded to Roe's motion by requesting additional time to respond under Ind. Trial Rule 56(F) until the close of discovery. On December 23, 2008, Roe filed an objection, stating that the time in which the Erwins were permitted to file a response to Roe's motion for summary judgment had passed. Additionally, on January 8, 2009, Roe filed a motion for enlargement of time in order to answer the Erwins discovery requests.

On January 14, 2009, the trial court issued an Order granting Roe an enlargement of time until February 8, 2009. Additionally, the next day, the trial court issued another Order denying the Erwins motion for an extension of time and scheduled Roe's summary judgment hearing on March 5, 2009. On March 2, 2009, the Erwins filed another response to Roe's motion for summary judgment and also asked the trial court for a continuance on the summary judgment hearing in order to complete discovery, which the trial court then reset for April 27, 2009. On March 16, 2009, Roe filed a reply, indicating to the trial court that any evidence submitted by the Erwins after the 30–day response period be stricken and disregarded by the trial court as required under Indiana Trial Rule 56(C). On April 17, 2009, the Erwins filed an amended response to Roe's motion for summary judgment.

On April 27, 2009, the trial court conducted a hearing on Roe's motion for summary judgment. On May 27, 2009, the trial court issued its Order granting summary judgment in favor of Roe, summarily finding that there were no genuine issues of material fact in dispute.

The Erwins now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Extension of Time* [2]

██ The Erwins contend that the trial court abused its discretion in denying

---

2. Roe argues that the Erwins have waived any argument pertaining to the trial court's January 15, 2009 Order denying their extension of time because they stated in their Notice of Appeal that they are appealing from the May 27, 2009 Order on summary judgment. *See*

Ind. Appellate Rule 9(F)(1). Typically, non-compliance with the Rules of Appellate Procedure is a basis for dismissal of an appeal or waiver of issues presented therein. *Fuller v. Allison Gas Turbine Div., General Motors Corp.*, 670 N.E.2d 64, 66 n. 2 (Ind.Ct.App.

their request to continue discovery. Specifically, they argue they were in the process of discovering facts to develop genuine issues of fact as to the question of Roe's knowledge of the lead-based paint and disclosure requirements. In response, Roe argues that the trial court was well within its discretion to deny the Erwins request for an extension of time to respond to Roe's motion for summary judgment.

■■ Indiana Trial Rule 56(C) requires the non-moving party to respond as follows: "An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." Should the non-moving party show by affidavit that he is unable to oppose the motion without discovery, then Ind. Trial Rule 56(F) provides:

> **When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Similarly, Ind. Trial Rule 56(I) allows "[f]or cause found, the Court may alter any time limit set forth in this rule upon motion made within the applicable time limit." Thus, read together, the trial court may, in its discretion, order a continuance pursuant to Indiana Trial Rule 56(F) and alter any time limits set forth in the rules pursuant to Indiana Trial Rule 56(I). *Thayer v. Gohil,* 740 N.E.2d 1266, 1268 (Ind.Ct.App.2001). To establish that the trial court abused its discretion, the party

appealing the ruling must show both that good cause existed to grant the motion and that it was prejudiced by the denial of the motion. *Troyer v. Troyer,* 867 N.E.2d 216, 219 (Ind.Ct.App.2007).

Here, the Erwins failed to show that the trial court abused its discretion. They filed their Complaint against Roe on January 29, 2008. Roe responded by filing a motion for summary judgment on November 20, 2008, thus, requiring the Erwins response due by Monday, December 22, 2008. However, on December 18, 2008, pursuant to Indiana Trial Rule 56(F), the Erwins filed their response to Roe's motion for summary judgment by requesting an extension of time and attaching an affidavit from their attorney stating that the Erwins were still in the process of discovery. While this motion was pending before the trial court, Roe not only filed an objection to the Erwins request for a continuance on December 23, 2008, but also filed a motion for an enlargement of time to respond to the Erwins discovery requests on January 8, 2009. The trial court, in its discretion, granted Roe's motion for an enlargement of time and denied the Erwins December 18, 2008 request for additional time pursuant to T.R. 56(F). While these rulings by the trial court may appear to have been inconsistent, as previously stated, the trial court was well within its discretion to deny the Erwins continuance.

Furthermore, because the trial court was within its discretion to deny the Erwins motion, the March 3 and April 17 responses filed by the Erwins after the trial court's January 15, 2009 Order denying their motion were filed outside of the thirty day response period and thus cannot

---

1996). However, Roe does not direct us to case precedent holding that such error is fatal to an appellant's claim. Because of our desire to address an appellant's claims on the

merits, we decline to find that the Erwins have waived any issues pertaining to the January 15, 2009 trial court Order on appeal and, instead, turn to the merits of their claim.

be considered as designated evidence by this court. *See* Ind. Trial Rule 56(H). As such, we can only consider evidence designated by Roe in her motion for summary judgment.

■ However, that said, we also note that Roe did not properly designate certain evidence in her designation of evidence as included in her motion for summary judgment. In her Designation of Evidence in Support of Motion for Summary Judgment, Roe designated "[e]xcerpts of deposition of Benjamin Erwin as specifically designated in Roe's Memorandum in Support of Motion for Summary Judgment." (Appellant's App. p. 65). Roe designated Shona's deposition the same way.

In *Filip v. Block,* 879 N.E.2d 1076, 1081 (Ind.2008), *reh'g denied,* our supreme court held that courts and opposing parties should not be required to flip from one document to another to identify which evidence is designated by the summary judgment movant. "Rather, the entire designation must be in a single place, whether as a separate document or appendix or as a part of a motion or other filing." *Id.* The court also held that, where the movant had designated pages of a deposition and later, in a different filing designated specific lines and paragraphs, the nonmovant could rely upon the entire designated pages of the deposition in responding to the motion for summary judgment. *Id.* Similarly, here, because Roe failed to properly designate all her evidence in her Designation of Evidence, the Erwins can rely upon the entire depositions.

### II. *Standard of Review*

This cause comes before this court as an appeal from a grant of summary judgment. Our standard of review for summary judgments is well settled. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. T.R. 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Love v. Rehfus,* 918 N.E.2d 448, 453 (Ind.Ct.App.2009).

Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was proper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negates at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.* We review a summary judgment order *de novo. Tri–Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1001 (Ind.2009).

### III. *Negligence*

#### A. *Standard of Review*

The Erwins argue that Roe was negligent for failing to disclose the existence of lead-based paint on the property and that she was negligent *per se.* Specifically, they argue that Roe failed to comply with provisions of both State and federal statutes, including Ind.Code § 32–31–8–5 and the Federal Lead–Based Paint Hazard Reduction Act, 42 U.S.C.A. 4851 *et seq.*

■ We first note that Indiana common law does not impose a duty on a landlord

to protect tenants from injuries to defective conditions on the property once possession and control of the property has been surrendered. *Hodge v. Nor–Cen, Inc.*, 527 N.E.2d 1157, 1159 (Ind.Ct.App. 1988), *reh'g denied, trans. denied.* This policy is known as *"caveat lessee"* or "let the lessee beware." *Dickison v. Hargitt*, 611 N.E.2d 691, 694 (Ind.Ct.App.1993).

One exception to *caveat lessee* is where a landlord may be liable to a tenant because of negligence that arises from the violation of a duty imposed by statute or ordinance. *Hodge v. Nor–Cen, Inc.*, 527 N.E.2d 1157, 1159 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* Under Indiana law, "[i]t is clear that statutory negligence is not predicated upon any test for ordinary or reasonable care, but rather is founded in the defendant's violation of a specific requirement of law." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1260 (Ind.Ct.App.2009) (citing *Smith v. Cook*, 172 Ind.App. 610, 361 N.E.2d 197, 199 (1977)). The unexcused violation of a statutory duty constitutes negligence *per se* "if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation." *Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind.2007) (citing *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 986 (Ind.Ct.App.1999)). However, negligence *per se* does not necessarily mean that there is liability *per se*. *Lindsey*, 898 N.E.2d at 1260.

> The violation of statutory duty is not actionable negligence unless it is also the proximate cause of the injury. The violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation. In order to find that an injury was the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed.

*Id.* (citations omitted).

Another exception is where a landlord may be held liable for personal injuries caused by latent defects known to the landlord but unknown to the tenant and which the landlord fails to disclose. *Dickison*, 611 N.E.2d at 695. Actual knowledge of the hidden defect on the landlord's part must exist before a duty to warn of the defect arises. *Id.* It is not enough that the landlord should have known of the hidden defect. *Id.* Ordinarily, actual knowledge is a question for the trier of fact. *Id.*

### B. *Analysis*

#### 1. *Federal Statutory Violations*

Alleging negligence *per se* based upon a violation of a federal statute, the Erwins contend that Roe violated statutory duties imposed to a landlord by 42 U.S.C. § 4852(d). In 1992, Congress passed the Residential Lead-based Paint Reduction Act (RLPHRA), Pub.L. No. 102–550, 106 Stat. 3897 (1992) (codified at 42 U.S.C. §§ 4851 to 4856 (1992)). RLPHRA was enacted to develop the means to "eliminate lead-based paint hazards in all housing as expeditiously as possible" while also educating the public about the "hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." 42 U.S.C. §§ 4851a(1) & (7). In light of these needs, Congress provided disclosure requirements for lessors or sellers of certain property. These disclosure provisions of RLPHRA specifically state that the Secretary of the Department of Housing and Urban Development (HUD) and the Administrator of the Environmental Protec-

tion Agency (EPA) shall promulgate regulations concerning the disclosure of lead-based paint hazards in "target housing," defined as housing built prior to 1978 with limited exception, which is offered for lease or sale. 42 U.S.C. §§ 4851b(27) & 4852(a)(1). These regulations have been codified at 40 C.F.R. Part 745 and 24 C.F.R. Part 35. RLPHRA provides, in relevant part:

The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall—

(A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [15 U.S.C. 2686]; [3]

(B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor; and

(C) permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

§ 4852d(a)(1); 40 C.F.R. § 745.107. The regulations also require each contract to lease target housing to include certain warning and disclosure language and an affirmation by the lessee that he has received the information. 40 C.F.R. § 745.113(b). The statute contemplates a private right of action for violations, stating that "[a]ny person who *knowingly* violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3) (emphasis added). In order to demonstrate a violation of the statute, a plaintiff must show that: (1) he was a lessee; (2) defendant was a lessor who failed to make the proper disclosures under 40 C.F.R. § 745.107; (3) the leased property was target housing; and (4) the lease contract was signed after the regulatory effective dates. *Sipes ex rel. Slaughter v. Russell,* 89 F.Supp.2d 1199, 1202–03 (D.Kan.2000).

It is undisputed that Roe did not give the Erwins the pamphlet regarding lead-based paint, disclose the presence of any known lead-based paint, permit them to conduct a risk assessment of the house, or provide the required language in the lease. Thus, if we choose to follow the requirements set forth in *Sipes,* Roe has clearly violated 42 U.S.C. § 4852d(a)(1). However, Roe argues that we need to go a step further, because in order to be liable for treble damages, the statute requires a "knowing" component to the violation. Roe maintains that because there is no evidence in the record she had knowledge of any lead-based paint or disclosure requirements, she is therefore not liable for damages.

In support of her position, Roe directs us to *Morris v. Flaig,* 511 F.Supp.2d 282 (E.D.N.Y.2007). In *Morris,* the plaintiffs, tenants in the defendant's rental property, alleged that their daughter was diagnosed with a disorder caused by the lead paint she ingested while living in the defendant's property. *Id.* at 290. The plaintiffs claimed that the defendants violated both state law and the RLPHRA by failing to provide them with a lead hazard in-

---

**3.** The pamphlet is entitled *Protect Your Family From Lead in Your Home,* and is available at: *http://www.epa.gov/lead/pubs/leadprot.htm,* (last visited March 9, 2010).

formation pamphlet, disclosing the presence of lead-based paint on the premises, or notifying them of their right to conduct a risk assessment for lead-based paint on the property. *Id.* at 300. The defendants argued that in order to create liability, the plain language of the statute requires knowledge of the lead-based paint at the time of the lease commencement or renewal. *Id.* In construing the knowledge requirement, in the Magistrate Judge's Report and Recommendation, the court explained that:

> in order to impose liability on the defendants, the first and third claims require a finding that the defendants were aware of the duty imposed on them by the regulations, while [t]he second claim requires a finding that the defendants had knowledge, not only of the duty imposed by the regulations, but also of the existence of lead paint hazards at the premises.

*Id.* The court agreed that the plain language of the statute requires knowledge at the time of lease commencement or renewal in order to create liability. *Id.* at 301. Additionally, the court noted that other jurisdictions have rejected the argument that defendants owe a "continuing duty of disclosure throughout the term of the lease." *Id.*

In an earlier case from another jurisdiction, *Smith v. Coldwell Banker Real Estate Servs.*, 122 F.Supp.2d 267, 273–74 (D.Conn.2000), that court discussed the meaning of a "knowing" violation of RLPHRA with respect to 42 U.S.C. § 4852d(b)(3). In that case, the plaintiff purchasers were verbally advised that lead paint was present in the home and were provided with a copy of the EPA lead hazard handbook prior to signing the contract for sale. *Id.* at 271. However, the plaintiffs did not receive a copy of a prior lead paint report until the closing and never signed the lead-based paint disclosure form. *Id.* Plaintiffs sought damages and moved for summary judgment on the basis that the defendants knowingly violated the disclosure requirements of 42 U.S.C. § 4852d. *Id.* The defendants argued that civil liability could not be imposed absent evidence of their intent or knowledge of noncompliance, and because "the statute only imposes civil liability for knowingly violating one of the [RLPHRA's] requirements, they cannot be liable for their inadvertence or inattentiveness, but only if the evidence persuades the factfinder that the violation was committed 'knowingly.'" *Id.* Simply put, the defendants argued that the statute imposes a higher scienter requirement and that the "knowingly violate" standard requires a showing of bad faith or willfulness. *Id.* at 273. In response, the court rejected the defendant's definition of "knowingly" and instead applied the commonly used definition, stating "[knowingly] means that defendant was aware of his or her conduct and that defendant did not perform it merely through ignorance, mistake or accident." *Id.* at 273 (citing BLACK'S LAW DICTIONARY 872 (6th ed. 1990)).

In the present case, we agree that the federal statute requires a "knowing" component in order for Roe to be liable for treble damages. Based on the record provided to us, there is no evidence to suggest that Roe knew about the lead-based paint in the house. In Roe's affidavit, which was properly designated to the trial court, she stated she had no knowledge of the RLPHRA or any of its requirements. She also stated that she did not have any knowledge of the lead-based paint in the house. Additionally, Ben and Shona both stated in their depositions that they did not have any evidence that Roe knew about the lead-based paint in the house and the RLPHRA requirements and simply failed to disclose that information to

them. As a result, we cannot see a genuine issue of material fact as to Roe's knowledge of her duty to disclose under the RLPHRA.

The fact that there is no genuine issue of material fact as to Roe's knowledge of her duties under the RLPHRA precludes only her liability for treble damages. In addition to the section imposing treble damages for "knowingly violat[ing]" the provisions of the RLPHRA, 40 C.F.R. § 745.118(c), the regulations state that "[f]ailure or refusal to comply" with provisions requiring the lessor to give the lessee the EPA pamphlet, the opportunity to conduct an assessment, or include the lead warning statement and acknowledgement of disclosure in the lease, "is a violation" of the RLPHRA, 40 C.F.R. § 745.118(e), subject to a penalty of not more than $10,000 for each violation, 40 C.F.R. § 745.118(f). Knowledge is not a requirement for imposition of these sanctions, and it is undisputed Roe violated three separate sections of the RLPHRA by not providing the Erwins with the pamphlet, the opportunity for an assessment, or the required lease language.

Moreover, although we have determined that Roe is not liable for treble damages, this does not preclude us from determining whether Roe is liable for negligence *per se* with respect to a claim of Indiana common law of negligence.

### 2. *State Common Law Negligence* Per Se

■■■■■ The Erwins also argue that Roe's failure to comply with the provision the federal statute also resulted in negligence *per se* with respect to the Indiana common law of negligence. As the United States Supreme Court noted, "[t]he violation of federal statutes and regulations is commonly given negligence *per se* effect in state tort proceedings." *Grable & Sons Metal Products, Inc. v. Darue Engineer-*

*ing & Mfg.,* 545 U.S. 308, 318, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257 (2005). As we previously stated, the unexcused violation of a statutory duty constitutes negligence *per se* if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. *Vandenbosch v. Daily,* 785 N.E.2d 666, 669 (Ind.Ct.App.2003), *trans. denied.* "Hence, a landlord may be liable to a tenant because of negligence which arises from the violation of a duty imposed by statute or ordinance." *Id.* (citing *Hodge* 527 N.E.2d at 1160). Additionally, negligence *per se* accepts the legislative judgment that acts in violation of the statute constitute unreasonable conduct. *Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 276 (Ind.2003).

■■■■■ It is clear from the legislative history and the text of the statute itself that the RLPHRA was enacted to protect children from hazard of lead-based paint in residential housing. As part of its legislative findings, Congress recognized, among other things, that:

(1) low-level lead poisoning is widespread among American children, afflicting as many as 3,000,000 children under age 6, with minority and low-income communities disproportionately affected;

(2) at low levels, lead poisoning in children causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems;

\* \* \*

(5) the health and development of children living in as many as 3,800,000 American homes is endangered by chipping or peeling lead paint, or excessive amounts of lead-contaminated dust in their homes;

(6) the danger posed by lead-based paint hazards can be reduced by abating lead-based paint or by taking interim measures to prevent paint deterioration and limit children's exposure to lead dust and chips;

42 U.S.C. § 4851. The first step of our analysis is to establish whether Roe violated the statute. The statute requires a lessor to disclose known lead-based paint and lead-based paint hazards and provide available reports to the lessee; give lessees an informational pamphlet developed by the EPA, HUD, and the Consumer Product Safety Commission; and include certain notification and disclosure language in the agreement. *See generally* 40 C.F.R. § 745.100. As noted above, it is undisputed that Roe failed to provide the Erwins with the informational pamphlet, the opportunity for assessment, or the required lease language. While we held that she is not liable for treble damages, we hold that Roe's violation of the RLPHRA is given negligence *per se* effect in Indiana tort proceedings. Second, we must determine whether D.E. fits the class of persons the statute intended to protect and whether the risk of harm was the type that occurred as a result of the violation. *Kho,* 875 N.E.2d at 212. We find that D.E. is in fact among those in the class of persons protected by the RLPHRA since he is a minor child, under the age of six. Further, the statute is intended to protect children living in homes with lead-based

pain and D.E.'s injury of lead poisoning is the injury that the statute intends to protect. Finally, "[t]he violation of [a] statutory duty is not actionable negligence unless it is also the proximate cause of the injury." *Lindsey,* 898 N.E.2d at 1260. To determine that the injury was the proximate cause of the violation, "the injury must have been a foreseen consequence of the violation and would not have occurred if the requirements of the statute had been observed." *Id.* Here, the proximate cause of Roe's failure to provide the Erwins with the information required by the statute resulted in the Erwins being unaware that the house they were renting could contain lead-based paint and the dangers the paint would pose to their young children. Thus, the fact that D.E. ingested the paint chips was a foreseeable consequence that could have been prevented had Roe provided the Erwins with the informational pamphlet, the opportunity to conduct a risk assessment of the premises, or the required warning language in the lease.

### 3. *State Statutory Violations*

 Finally, the Erwins argue that Roe violated Indiana statutes; specifically, failure to deliver the property in a safe, clean and habitable condition, I.C. § 32–31–8–5(1), failure to comply with health and housing codes, I.C. § 32–31–8–5(2),[4] and failure to remedy the condition on the property after notice had been provided, I.C. § 32–31–8–6(b).[5]

---

4. In their brief, the Erwins state that Roe "fail[ed] to comply with health and housing codes [ ] applicable to the property," but include no further discussion on this point. (Appellant's Br. p. 15). "Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on...." Ind. Appellate Rule 46(A)(8)(a). We will not consider an appellant's claims when he fails to present cogent arguments, supported by authority as required by the rules. *Shepherd v. Truex,* 819

N.E.2d 457, 463 (Ind.Ct.App.2004). Waiver notwithstanding, we will address this issue.

5. Roe argues that the Erwins Complaint contained "no allegations that [the Erwins] provided Roe the notice required in I.C. § 32–31–8–6(b) or that the Erwins, after allegedly providing Roe with notice, gave Roe a reasonable amount of time to remedy any alleged issues." (Appellee's Br. p. 16). We note that the Erwins Complaint was sufficiently pled in accordance with I.C. § 32–31–8–6(b). To

The Indiana Residential Landlord–Tenant statutes place specific obligations on a landlord. Indiana Code section 32–31–8–5 states that a landlord is required to do the following, in relevant part: (1) deliver the rental premises to a tenant in compliance with the rental agreement, and in a safe, clean, and habitable condition; and (2) comply with all health and housing codes applicable to the rental premises. However, before a tenant files suit against the landlord, he or she must comply with I.C. § 32–31–8–6(b). According to I.C. § 32–31–8–6(b), in order for a tenant to bring suit, the following prerequisites must be met:

(1) The tenant gives the landlord notice of the landlord's noncompliance with a provision of this chapter.

(2) The landlord has been given a reasonable amount of time to make repairs or provide a remedy of the condition described in the tenant's notice. The tenant may not prevent the landlord from having access to the rental premises to make repairs or provide a remedy to the condition described in the tenant's notice.

(3) The landlord fails or refuses to repair or remedy the condition described in the tenant's notice.

If successful, the tenant may recover, among other things, actual damages, consequential damages, attorney's fees, and court costs. I.C. § 32–31–8–6(d).

In their Complaint, the Erwins argue that after they gave Roe notice that the house contained lead-based paint because D.E. had tested positive for lead poisoning, she refused to cure the condition. Roe contends that according to I.C. § 32–31–8–6(e), her liability began after the Erwins informed her of the problem.

Because our jurisdiction's case law on lead paint litigation is limited, we turn to *Brooks v. Lewin Realty III, Inc.,* 378 Md. 70, 835 A.2d 616 (2003), and find it to be instructive to the current case. In *Brooks,* the plaintiff was renting a house that was eventually sold to the defendant. *Id.* at 617, 378 Md. at 72, 835 A.2d 616. Before the defendant bought the house, the property manager conducted a walk-through inspection, at which time flaking paint was present in numerous areas in the house. *Id.,* 378 Md. at 72, 835 A.2d 616. Later that year, the plaintiff's child was diagnosed with elevated levels of lead in his blood. *Id.* As a result, the plaintiff filed a complaint against the landlord, claiming among other things, that the defendant was negligent; specifically, that the defendant violated city housing codes dealing lead-based paint and children, and exposed the child to an unreasonable risk of harm after the landlord had actual and constructive knowledge of the flaking paint. *Id.* at 618, 378 Md. at 73–4, 835 A.2d 616. Furthermore, the plaintiff argued that under Maryland law, the defendant's violation of the city housing codes was evidence of negligence, and as such, under ordinary tort principles, "if such negligence proximately causes an injury, it [would] give rise to a cause of action for damages despite a lack of notice or knowledge on the alleged tortfeasor's part." *Id.* at 620, 378 Md. at 76–77, 835 A.2d 616.

state a claim for relief, a Complaint need only contain (1) a short and plain statement of the claim and (2) a demand for relief. *See* Ind. Trial Rule 8(A). The pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case, but merely requires pleading the operative facts so the opposing party is on notice as to the evidence to be presented at trial. *City of Clinton v. Goldner,* 885 N.E.2d 67, 74 (Ind.Ct.App.2008). Therefore, the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim as to be able to prepare to meet it. *Id.*

In its thorough discussion, the court began by stating that in order to make a *prima facie* case in a negligence action, the plaintiff must show: (1) the violation of a statute or ordinances designed to protect a specific class of persons which includes the plaintiff, and (2) that the violation proximately caused the injury complained of. *Id.* at 621. "Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent." *Id.* (citing *Brown v. Dermer*, 357 Md. 344, 361–62, 744 A.2d 47, 57 (2000)). The court went on to state that "where there is evidence that the violation of a statute proximately caused the plaintiff's injury, evidence of such violation 'is sufficient evidence to warrant the court in submitting the case to the jury on the question of the [defendant's] negligence.'" *Id.* (citing *Crunkilton v. Hook*, 185 Md. 1, 4, 42 A.2d 517, 519 (1945)). The trier of fact must then evaluate whether the actions taken by the defendant were reasonable under all the circumstances. *Id.*

During Shona's deposition, she testified that she talked to Roe about the lead-based paint on two or three occasions. The first time Shona notified Roe that the paint had been tested and was found to contain lead she also told Roe that D.E. had been diagnosed with lead poisoning. Shona stated that Roe told her to "just go out and buy the paint and fix it." (Appellant's App. Vol. II, p. 189). Additionally, after that conversation, Roe did not come to the house to assess the situation.

The second time Shona told Roe about the lead paint was after the Environmental Protection Team screened and assessed the house. Shona stated that she:

> told [Roe] that our son was sick and that, you know, we'd either have to move or she'd have to repair the house. We

didn't, I mean, that was our only options was to fix where we [were] at or leave. And she told us to fix it ourselves, and so we left.

(Appellant's App. Vol. II, p. 190). Moreover, Roe did not offer to pay the Erwins for fixing the paint.

We find there to be a genuine issue of material fact as to whether the Erwins provided Roe with a reasonable amount of time following the notice to cure the defect, whether Roe's conduct was reasonable under the circumstances and the amount of damages owed to the Erwins. Once Roe was made aware of the defect, we find that Roe should have either repaired the problem or should have allowed the Erwins to break their lease and claim damages. In turn, the Erwins are required to demonstrate their damages for moving expenses, finding a comparable living arrangement, and the remainder of the lease. Thus, we remand to the trial court for further proceedings.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court was within its discretion to deny the Erwins' extension of time; (2) Roe is not liable for treble damages with respect to the federal statute; however, knowledge is not a requirement for violation of RLPHRA 40 C.F.R. § 745.118(e); (3) Roe was negligent *per se* with respect with state tort law; and (4) there is a genuine issue of material fact as to whether Roe was provided with a reasonable amount of time following the notice to cure the defect.

Affirmed in part, reversed in part and remanded for further proceedings.

KIRSCH, J., and ROBB, J., concur.