


FILED

Aug 15 2025, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

Maple Tree LP, II, et al.,

*Appellants-Defendants*

v.

Rachel Rebollo,

*Appellee-Plaintiff*

August 15, 2025

Court of Appeals Case No.
25A-CT-42

Interlocutory Appeal from the LaPorte Superior Court

The Honorable Richard R. Stalbrink, Judge

Trial Court Cause No.
46D02-2212-CT-2078

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] After suffering a fall in her apartment bathroom, Rachel Rebollo filed suit against her landlords, Kittle Property Group, Inc., and Maple Tree, LP, II (collectively, "Landlords"), alleging that their failure to approve her request to install handrails in her bathroom violated the federal Fair Housing Amendments Act of 1988 (FHAA) and Indiana's landlord-tenant statutes.

[2] In this interlocutory appeal, Landlords challenge the trial court's denial of their motion for summary judgment and the granting of Rebollo's motion to strike a portion of her deposition testimony Landlords designated in support of summary judgment. Finding genuine issues of material fact which preclude the entry of summary judgment and no reversible error in granting the motion to strike, we affirm.

## Facts and Procedural History

[3] Rebollo was born with arthrogryposis, a condition that affects the development of muscles and bones and, in Rebollo's case, particularly impacted the left side of her body. Appellants' Appendix Vol. 2 at 53-54. Due to that condition, Rebollo's left leg is one inch shorter than her right, and she has experienced lifelong pain and mobility issues.

[4] In July 2020, Rebollo and her husband moved into Unit 05-10H (the "Unit") at Landlords' apartment complex in LaPorte, where they resided until 2023.

Rebollo signed a one-year Apartment Lease Renewal (the "Lease") on July 19, 2022. Though this Lease was executed several months after the events at issue in this appeal, both Rebollo and Landlords agree that identical Lease terms were in effect at all relevant times. *See* Appellants' Brief at 16-17; Appellee's Br. at 5, 12-14.

[5]     The Lease provides:

> **Decorating.** . . . Resident shall not alter or redecorate the Apartment without written consent of the Landlord. All alterations to the premises shall remain for the benefit of the Landlord unless otherwise provided in said consent. Resident shall not drive nails, tacks, screws, or apply other fasteners on or in any of the walls, ceilings, woodwork, or floors of said premises or allow the same to be done. Resident shall observe and comply with rules and regulations established by Landlord. Except as otherwise provided herein, nothing whatsoever shall be attached or affixed either to the exterior of said building or any part thereof, whether permanent or otherwise, without written consent of the Landlord. Landlord is hereby authorized to remove, at the expense of Resident, anything so attached or affixed without Landlord's consent.

Appellant's App. Vol. 2 at 177-78.

[6]     In February 2022, Rebollo called the apartment complex's office to ask how she could "get safety rails in [her] bathroom" because she and her husband were having difficulty getting in and out of their bathtub. *Id.* at 94, 96. Rebollo did not believe she was allowed to install a handrail herself, since doing so would require driving screws into the wall.

An office manager advised Rebollo that she would need to submit a request form and a doctor's referral. The manager gave Rebollo a "Request for Reasonable Accommodation Form" containing the following instructions:

> A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common spaces. If you, a member of your household, or someone associated with you has a disability and would like to make a request for a reasonable accommodation, please complete this form and return it to Property Management. Property Management will respond to your request in a reasonable time, usually no more than two weeks from the date the request was submitted and any related information and verification is received.
>
> Family, friends, medical care providers, or Property Management staff may assist you in completing this form. If your disability is not obvious or readily apparent, you may need to provide additional information which verifies that the person meets the definition of disability, describes the needed accommodation, and shows the relationship between the disability and the need for the requested accommodation. In some circumstances, a doctor or other medical professional, peer support group, or other reliable third party may need to provide this verification.

*Id*. at 220.

Rebollo completed the form and returned it to the apartment complex's office on March 1, 2022. Rebollo indicated on the form that she was "requesting the following reasonable accommodation: HANDRAILS FOR BATHTUB[.]" *Id*. She further indicated that her disability was not "obvious or otherwise known

to property management" and that her "need for the requested accommodation" was not "readily apparent[.]" *Id.* When asked to "describe the disability and how the disability substantially limits one or more major life activities[,]" Rebollo answered, "IT'S HARD TO GET IN + OUT OF THE TUB – BIRTH DEFECT[.]" *Id.* at 221. And when asked to "describe the relationship between the disability and the need for the requested accommodation," Rebollo repeated, "HAND RAILS IN BATHTUB[.]" *Id.*

[9] The record is unclear what, if anything, Landlords did with the request after Rebollo submitted it. Included in the request was an authorization for Landlords to obtain third party verification of Rebollo's disability from her doctor, Dr. Philip Maher. Landlords concede they received a Third-Party Verification form signed by Dr. Maher on March 2, 2022.[1] But Landlords did not follow up with Rebollo to tell her the disposition of her request, what procedures they were following to process it, or what additional information they may have needed from her or Dr. Maher.

[10] On April 22, 2022, fifty-two days after submitting the request, Rebollo slipped and fell in her bathroom. Rebollo was unable to recall the specifics of the fall but did remember that her right foot slipped out from under her as she was

---

[1] The trial court granted Rebollo's motion to strike Landlords' assertion in their summary judgment brief that Dr. Maher did not correctly fill out the Third-Party Verification. Appellants' App. Vol. 2 at 14; Appellants' App. Vol. 3 at 14-15. Though Landlords argue on appeal the trial court erred in striking portions of Rebollo's deposition testimony, they do not challenge its decision to strike their contention that Dr. Maher incorrectly filled out the verification form.

entering the bathroom, causing her to fall "toward the bathtub and the wall." *Id*. at 118–19. She suffered various injuries, including a left knee fracture, three broken ribs, and a head contusion.

[11] At her deposition, Rebollo described that as she fell toward the tub, she "went to grab . . . where possibly a hand railing would have been for most people to get in and out of the shower with." *Id*. at 119-20. She further testified that "had there been a grab bar on the side of the wall . . . [she] probably still would have hurt [herself] but not as badly." *Id*. at 138.

[12] Rebollo sued Landlords, alleging that their failure to approve the installation of handrails was a failure to provide a reasonable accommodation under the FHAA. She further alleged Landlords breached their duty to use reasonable care in the operation, inspection, maintenance, and repair of the Unit by failing to provide handrails, and that Landlords' failure to approve Rebollo's request within a reasonable time violated Indiana Code section 32-31-8-5, a provision of Indiana's landlord-tenant statutes.

[13] Landlords moved for summary judgment, arguing that (1) they had no duty under the FHAA to install handrails in Rebollo's bathroom; (2) even if they did have a duty to install handrails, their failure to do so was not the proximate cause of Rebollo's injuries; and (3) they complied with their obligations under the landlord-tenant statutes. Rebollo moved to strike a portion of her deposition testimony Landlords designated in support of summary judgment. The trial court denied summary judgment and granted the motion to strike. On

Landlords' motion, the trial court certified its order for interlocutory appeal, and we accepted jurisdiction.

## Discussion and Decision

[14] Landlords appeal the denial of their motion for summary judgment and the granting of Rebollo's motion to strike. "'When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court.'" *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 824 (Ind. 2017) (quoting *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012)). "The moving party [] bears the burden of showing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law." *Fox v. Barker*, 170 N.E.3d 662, 665 (Ind. 2021). "Summary judgment is improper if the moving party fails to meet this burden, or, if it does, the nonmoving party [] establishes a genuine issue of material fact." *Id.* All reasonable inferences must be drawn in the non-movant's favor, with "all doubts as to the existence of a material issue" construed "against the moving party." *Id.* at 665-66.

[15] The trial court's decision to grant or deny summary judgment is reviewed de novo. *Pennington v. Mem'l Hosp. of S. Bend, Inc.*, 223 N.E.3d 1086, 1093 (Ind. 2024). "However, the trial court's decision to admit or strike evidence at the summary-judgment stage is reviewed for an abuse of discretion." *Id.*

## 1. The Fair Housing Amendments Act of 1988 (FHAA)

[16] The first count of Rebollo's complaint alleges that Landlords failed to provide a reasonable accommodation in violation of the FHAA. "[T]he FHAA makes it

unlawful 'to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer because of a handicap.'" *Sanders v. AHEPA 78 VI Apartments, Inc.*, 237 N.E.3d 1126, 1130 (Ind. Ct. App. 2024), *as modified on reh'g*, 243 N.E.3d 352 (Ind. Ct. App. 2024) (quoting 42 U.S.C. § 3604(f)(1)) (internal brackets omitted).[2] "Discrimination" under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B).

[17] To succeed on her claim that Landlords failed to provide a reasonable accommodation, Rebollo was required to prove (1) that she is disabled within the meaning of the FHAA; (2) she requested a reasonable accommodation for such disability; (3) the requested accommodation was necessary to afford her an opportunity to use and enjoy her dwelling; and (4) Landlords refused to make the requested accommodation. *See Sanders*, 237 N.E.3d at 1130. Landlords contend Rebollo failed to prove the second of these elements, so that is the focus of our analysis.

---

[2] As was observed by the court in *Sanders*, "the FHAA refers to discrimination based on 'handicap'" rather than disability, but the definition of "handicap" under the FHAA is substantively the same as the definition of "disability" provided by other federal statutes. 237 N.E.3d at 1130 n.1 (citing 42 U.S.C. § 3602(h), 29 U.S.C. § 705(9)(B), 42 U.S.C. § 12102(2)). Courts use the terms interchangeably, though "disability" is preferred. *Id.*; *see also Furbee v. Wilson*, 144 N.E.3d 801, 806 n.6 (Ind. Ct. App. 2020) (noting disability scholars generally prefer "disability").

[18] According to Landlords, Rebollo's request for the installation of handrails was one for a reasonable *modification* under the FHAA, not a reasonable *accommodation*. Appellants' Br. at 12. An "accommodation" involves a "'change[] in rules, policies, practices or services as is necessary to provide [a disabled] person with access to housing that is equal to that of those who are not disabled.'" *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 967 (7th Cir. 2018) (quoting *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003)). In contrast, the FHAA classifies a request to make physical changes to an existing premises as one for a "reasonable modification." 42 U.S.C. § 3604(f)(3)(A). Under the FHAA, a housing provider has no obligation to make reasonable modifications, but cannot "refuse to permit, at the expense of a handicapped person, reasonable modifications of existing premises . . . if the proposed modifications may be necessary to afford the handicapped person full enjoyment of the premises of a dwelling." 24 C.F.R. § 100.203(a).

[19] Landlords point to the following portion of Rebollo's deposition transcript to support their contention that Rebollo was asking for a physical change to her Unit that should be construed as a request for a reasonable modification:

> Q. You would agree the request to install a handrail in your bathroom was a request for a physical change to your apartment bathroom?
>
> [Rebollo's counsel]: Objection. You can answer. I have to make certain objections to preserve the record, but you can go ahead and answer the question.

A.     Can you repeat it, please.

Q.     You would agree the request to install a handrail in your bathroom was the request for a physical change to your apartment?

[Rebollo's counsel]:     Same objection.

A.     Yes.

Q.     You were not requesting a policy change to any procedures at Maple Tree; correct?

[Rebollo's counsel]:     Objection.  Form.  You can answer.

A.     No.

Q.     Let me ask it again.

A.     Okay.

Q.     You were not requesting a policy change to any procedures at Maple Tree; is that correct?

[Rebollo's counsel]:     Objection.  Form.

A.     Not that I knew of; know of.

Appellant's App. Vol. 2 at 108–09.

Rebollo moved to strike this portion of her testimony, arguing the questions from Landlords' counsel called for legal conclusions. Appellant's App. Vol. 3 at 14. Landlords contend the trial court erred in granting that motion because Rebollo's counsel did not properly preserve his objections and, even if he had, the questions did not call for legal conclusions. Appellants' Br. at 20. But we need not address whether the trial court abused its discretion by striking this portion of Rebollo's testimony because even had the court not done so, the whole of the designated evidence—when viewed in the light most favorable to Rebollo—presents genuine issues of fact regarding whether Rebollo requested a reasonable accommodation under the FHAA. *See* Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order . . . is ground for granting relief or reversal on appeal where its probable impact . . . is sufficiently minor so as not to affect the substantial rights of the parties.").

Rebollo testified that she was not fully aware of "what policies or procedures [Landlords] had in place[,]" and that this lack of knowledge prompted her to ask whether handrails could be installed in her bathroom at all. Appellant's App. Vol. 2 at 109. Rebollo believed that a handrail would have to be screwed into the wall and assumed Landlords' policies prevented her from doing so, which is why Rebollo proactively asked the apartment complex's office, "How do I get safety rails in the bathroom?" *Id*. at 96, 139. These facts support a reasonable inference that when Rebollo asked the office about handrails, she was seeking a change "'in rules, policies, practices, or services'" to allow for the installation of handrails, making her request one for a reasonable

accommodation under the FHAA. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006) (quoting 42 U.S.C. § 3604(f)(3)(B)).

[22] Moreover, Landlords' actions support an inference that they considered Rebollo's request to be for a reasonable accommodation. Landlords instructed Rebollo to complete a "Request for Reasonable Accommodation Form" which indicated it could be used to request "a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling[.]" Appellant's App. Vol. 2 at 220. From this, it can reasonably be inferred that the office manager who spoke with Rebollo believed she was required to request a change to a rule, policy, practice, or service before handrails could be installed.

[23] Landlords downplay the fact that the apartment complex's office instructed Rebollo to complete the reasonable accommodation form by contending "an error in the name of the form does not change the substance of [Rebollo's] request." Appellants' Br. at 14. But the substance of Rebollo's request was a mere general inquiry, i.e., "How do I get safety rails in the bathroom?" Appellants' App. Vol. 2 at 96. Rebollo only submitted a request for a reasonable accommodation upon Landlords' explicit instruction that she do so. Accepting Landlords' argument would require us to hold that a landlord may instruct their tenant to request an accommodation, only to later argue when facing potential liability for failing to provide it that what the tenant asked for was not really an accommodation after all. To do so would punish a tenant for

following their landlord's instructions and create a perverse incentive for landlords seeking to avoid their obligations under the FHAA.

[24] Nor are we persuaded by Landlords' argument that Rebollo was not required to receive their written permission before she could install handrails. The Lease prohibited Rebollo from driving "nails, tacks, screws, or [] other fasteners on or in any of the walls, ceilings, woodwork, or floors" or from otherwise making alterations to the Unit "without written consent of the Landlord." *Id.* at 177. According to Landlords, because the prohibition against unauthorized alterations appears in a paragraphed labeled "Decorating," Rebollo was required to obtain Landlords' written consent only if she desired "to hang artwork on her wall or to otherwise 'decorate' her space." Appellants' Br. at 8.

[25] But when interpreting a lease, as with any other contract, we must give unambiguous terms their "plain and ordinary meaning in view of the whole contract, without substitution or addition." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018). Additionally, the "[i]nterpretation and construction of contract provisions are questions of law." *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). Though the paragraph at issue is labeled "Decorating," its provisions have broader applicability. For example, the Lease provides that Rebollo "shall not alter *or* redecorate" without Landlords' permission and continues, in no uncertain terms and without limitation, that Rebollo "shall not drive nails, tacks, screws, or apply other fasteners on or in any of the walls, ceilings, woodwork, or floors of said

premises or allow the same to be done." Appellant's App. Vol. 2 at 177 (emphasis added).

[26] We are also unpersuaded by Landlords' argument that the federal regulations implementing the FHAA define *any* request involving the installation of handrails in a bathroom as one for a reasonable modification. 24 C.F.R. section 100.203 provides the following as an example of a request for reasonable modification:

> A tenant with a handicap asks his or her landlord for permission to install grab bars in the bathroom at his or her own expense. It is necessary to reinforce the walls with blocking between studs in order to affix the grab bars. It is unlawful for the landlord to refuse to permit the tenant, at the tenant's own expense, from making the modifications necessary to add the grab bars.

24 C.F.R. § 100.203(c)(1). However, this example can be distinguished from the present circumstances. In section 100.203(c)(1), the disabled tenant requires modifications to their apartment that go beyond simply affixing grab bars to a wall; the tenant must *reinforce* the bathroom walls before grab bars can be installed. *Id*. But in Rebollo's case, nothing in the record suggests that reinforcement or similar modifications needed to be made to the Unit's bathroom before a handrail could be installed or, at least, that Rebollo requested permission to make any such modifications.

[27] Instead, Rebollo required an exception to Landlords' *policies*, i.e., the prohibition against driving screws or other fasteners into the walls, to enable the installation of handrails in her Unit. Landlords concede that such an exception,

if in fact requested by Rebollo, would qualify as a reasonable accommodation under the FHAA. *See* Appellants' Br. at 16 (the Lease's "provision prohibiting the use of screws, nails, tacks, or other fasteners is a policy" and "the FHA[A] provides relief for tenants who require exceptions to policies through requesting a reasonable accommodation").

[28] For these reasons, there are genuine issues of material fact as to whether Rebollo submitted a request for a reasonable accommodation, and the trial court did not err in denying Landlords' motion for summary judgment on the FHAA claim.

## 2. Negligence

[29] Rebollo further alleges Landlords were negligent in failing to approve her request for handrails. To prevail on this claim, Rebollo was required to prove (1) a duty owed by Landlords to her; (2) Landlords' breach of that duty; and (3) compensable injury proximately caused by Landlords' breach of duty. *Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 906 (Ind. 2024), *reh'g denied*.

[30] Landlords argue they had no common law or statutory duty to approve Rebollo's request for handrails and even if they did, the designated evidence does not demonstrate their failure to approve Rebollo's request proximately caused her injuries. With respect to the element of breach, Landlords rely on their argument that they owed no duty to Rebollo, as absent duty there can be no breach. As such, we address only the elements of duty and proximate cause.

## A. Duty

[31] Under Indiana law, a landlord does not have a common law duty "to protect tenants from injuries [due] to defective conditions on the property once possession and control of the property has been surrendered." *Erwin v. Roe*, 928 N.E.2d 609, 615-16 (Ind. Ct. App. 2010). "This policy is known as 'caveat lessee' or 'let the lessee beware.'" *Id.* at 616 (quoting *Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157, 1159 (Ind. Ct. App. 1988), *reh'g denied*, *trans. denied*). However, one exception to caveat lessee is where a landlord's liability to a tenant arises from negligence based on the landlord's "violation of a duty imposed by statute or ordinance." *Id.* "'[S]tatutory negligence is not predicated upon any test for ordinary or reasonable care, but rather is founded in the defendant's violation of a specific requirement of law.'" *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1260 (Ind. Ct. App. 2009) (quoting *Smith v. Cook*, 361 N.E.2d 197, 200 (Ind. Ct. App. 1977)).

[32] Rebollo points to three statutory authorities she contends imposed a duty on Landlords to approve her request for handrails: (1) the FHAA; (2) the Americans with Disabilities Act (ADA); and (3) Indiana's landlord-tenant statutes, specifically Indiana Code section 32-31-8-5(2). However, Rebollo does not cite any specific provision of the ADA or explain how the ADA applies to the circumstances of this case, so we focus our analysis on Landlords' duties under the FHAA and Indiana Code section 32-31-8-5(2).

[33] "Generally, the existence of a legal duty owed by one party to another in a negligence action is a pure question of law." *Hammock v. Red Gold, Inc.*, 784

N.E.2d 495, 498 (Ind. Ct. App. 2003), *trans. denied*. But where factual questions are interwoven, "the existence of a duty [is] a mixed question of law and fact to be determined by the fact-finder." *Id.* In the present case, the designated evidence supports a reasonable inference that Rebollo requested an accommodation within the meaning of the FHAA. *See supra* Section 1. Because we cannot conclude as a matter of law that Rebollo's request fell outside of the FHAA accommodation framework, we likewise cannot hold on the record before us that Landlords owed no obligation to grant that accommodation.

[34] Another consideration that prevents us from deciding Landlord's duties as a matter of law is that the FHAA "does not demand that housing providers immediately grant all requests for accommodation." *Furbee*, 144 N.E.3d at 807. After a tenant submits a request for a reasonable accommodation, the housing provider may make "a final decision, 'which necessarily includes the ability to conduct a meaningful review' to determine whether the FHA[A] requires the requested accommodation." *Id.* (quoting *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1286 (11th Cir. 2014)).

[35] However, "[f]ailing to make a timely determination after meaningful review amounts to a constructive denial of the requested accommodation, as an indeterminate delay has the same effect as an outright denial." *Id.* The factors relevant to whether a constructive denial occurred include "'whether the delay was caused by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or bad faith, as opposed to mere bureaucratic

incompetence or other comparatively benign reasons.'" *Id*. (quoting *Bone v. Village Club, Inc.*, 223 F. Supp. 3d 1203, 1214 (M.D. Fla. 2016)). Such determination generally requires a highly fact-sensitive analysis. For example, in *Furbee* we found no constructive denial of a tenant's request to keep a service animal in her apartment where the landlord "did not know Tenant's disability or disability-related need for the animal" and consequently "requested additional information" from the tenant. *Id*. at 809. Critically, the tenant did not respond to the landlord's request for additional information, so any delay in processing tenant's request could not be attributed to the landlord. *Id*. at 808.

[36] But in this case, the record is insufficient to enable us to determine whether Landlords meaningfully reviewed Rebollo's request or otherwise engaged in a good faith effort to determine whether the FHAA required them to provide an accommodation to the extent Rebollo requested one. The designated evidence merely establishes that in the fifty-two days between submitting the request for handrails and falling in her bathroom, Rebollo was not asked by Landlords to provide any additional information regarding her disability or the nature of her request. And though Rebollo signed a release permitting them to do so, the record is silent as to whether Landlords asked Dr. Maher to provide additional information regarding Rebollo's claimed disability. Without evidence demonstrating what Landlords did with Rebollo's request, we cannot say as a matter of law that Landlords meaningfully reviewed Rebollo's disability or the reasonableness of her request such that Landlords could have determined in

good faith that they were not obligated to provide an accommodation under the FHAA.

[37] The same logic applies to Landlords' duties under Indiana Code section 32-31-8-5. That statute requires a landlord to, among other things, "[c]omply with all health and housing codes applicable to the rental premises." Ind. Code § 32-31-8-5(2). Landlords advance no argument that a violation of the FHAA is not actionable under section 32-31-8-5(2). So, for the same reasons we cannot determine as a matter of law that Landlords had no duty arising under the FHAA, we cannot say that Landlords had no duty to accommodate Rebollo under Indiana Code section 32-31-8-5(2).

### B. Proximate Cause

[38] Landlords next argue that even if they had a duty to grant Rebollo's request for handrails under the FHAA and Indiana Code section 32-31-8-5(2), their failure to do so did not proximately cause Rebollo's injuries. "'The violation of a statutory duty is not actionable negligence unless it is also the proximate cause of the injury.'" *Erwin*, 928 N.E.2d at 616 (quoting *Lindsey*, 898 N.E.2d at 1260). A statutory violation is the proximate cause of an injury only if the injury was "'a foreseen consequence of the violation and would not have occurred if the requirements of the statute had been observed.'" *Id*. at 620 (quoting *Lindsey*, 898 N.E.2d at 1260).

[39] Proximate cause is generally a question of fact and "becomes a question of law where only a single conclusion can be drawn from the facts". *Johnson v. Jacobs*,

970 N.E.2d 666, 671 (Ind. Ct. App. 2011) (citing *Havert v. Caldwell*, 452 N.E.2d 154, 159 (Ind. 1983)), *trans. denied*. Because "proximate cause is primarily a question of fact" it "ordinarily is not properly resolved on summary judgment." *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 328 (Ind. Ct. App. 2009), *trans. denied*.

[40] Here, Landlords contend that because Rebollo was not getting in or out of the bathtub at the time she fell, "[i]t is inconceivable the installation of handrails *inside* [Rebollo's] bathtub would have prevented her from slipping . . . ." Appellants' Br. at 23 (emphasis in original). But Rebollo testified that when she fell, she attempted to grab "where possibly a hand railing would have been for most people to get in and out of the shower with." Appellant's App. Vol. 2 at 119-20. She further testified that she believed "had there been a grab bar on the side of the wall there . . . I probably still would have hurt myself but not as badly." *Id*. at 138.

[41] It is the role of the fact-finder to determine what weight to give to Rebollo's testimony and decide whether she could have conceivably prevented or reduced the extent of her injuries had handrails been installed in her bathroom or bathtub. *See J.B. Hunt Transp., Inc. v. Guardianship of Zak*, 58 N.E.3d 956, 972 (Ind. Ct. App. 2016) ("[T]he question of causation often requires a weighing of disputed facts."), *trans. denied*. On the record before us, whether and to what extent Landlords' failure to grant Rebollo's request to install handrails contributed to her injuries cannot be resolved as a matter of law. As such, the trial court did not err in declining to enter summary judgment in Landlords' favor on Rebollo's negligence claim.

## 3. Indiana Code Section 32-31-8-5

[42] Rebollo's third and final cause of action alleges Landlords violated Indiana Code section 32-31-8-5 by failing to approve her request for handrails. As noted above in Section 2(A), the obligations imposed on landlords by section 32-31-8-5 include a duty to "[c]omply with all health and housing codes applicable to the rental premises." I.C. § 32-31-8-5(2). Damages for failure to comply with section 32-31-8-5 are recoverable under Indiana Code section 32-31-8-6, which provides, in part, "[a] tenant may bring an action in a court with jurisdiction to enforce an obligation of a landlord under this chapter." I.C. § 32-31-8-6(a).

[43] Landlords argue that Rebollo failed to establish a violation of Indiana Code section 32-31-8-5 because, among other reasons, Landlords did not have a duty to install handrails under the FHAA. But having rejected Landlords' argument that they had no duties under the FHAA or section 32-31-8-5(2), we further reject Landlords' contention that Rebollo's section 32-31-8-5 claim fails as a matter of law.

[44] Because the trial court's denial of summary judgment on Rebollo's Indiana Code section 32-31-8-5 claim can be affirmed on this basis alone, we need not address Landlords' arguments that they complied with various other duties imposed by the landlord-tenant statutes, such as their duty to deliver the Unit in a safe, clean, and habitable condition under Indiana Code section 32-31-8-5(1) or to make all reasonable efforts to keep common areas in a clean and proper condition under Indiana Code section 32-31-8-5(3).

## Conclusion

Even had the trial court not stricken a portion of Rebollo's deposition testimony, Landlords failed to demonstrate the absence of genuine issues of material fact as to any one of Rebollo's claims. Thus, the trial court properly denied Landlords' motion for summary judgment and committed no reversible error in granting Rebollo's motion to strike.

Affirmed.

Altice, C.J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANTS

C. Christopher Dubes
Amanda C. Delekta
Carson LLP
Fort Wayne, Indiana


ATTORNEY FOR APPELLEE

Nicholas T. Otis
Newby Lewis Kaminski & Jones, LLP
LaPorte, Indiana